**In the Matter of: Peter Francis GERACI, Appellant.**

**No. 97–2393.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1997.

Decided March 9, 1998.

Peter F. Geraci, Chicago, IL, pro se.

Sabrina M. Petesch, Office of the United States Trustee, Peoria, IL, for Edward B. Hopper, II, Trustee.

John E. Maloney, Chapter 7 Trustee, Urbana, IL, pro se.

Before CUMMINGS, EASTERBROOK, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Peter Francis Geraci appeals an order entered by Bankruptcy Judge Gerald D. Fines in twelve consumer bankruptcy cases where Geraci's law firm served as debtor's counsel. Judge Fines consolidated the cases for the purpose of considering whether Geraci's fees exceeded the "reasonable value" of his firm's services under 11 U.S.C. § 329(b). After conducting a hearing and determining that

Geraci's fees in fact were excessive, Judge Fines ordered Geraci to return to his clients that portion of his fee that exceeded $800. Judge Fines further ordered Geraci to submit a detailed fee itemization in all pending and future no-asset consumer cases in which he receives a fee exceeding that amount. *In re Chellino*, 209 B.R. 106, 124–25 (Bankr. C.D.Ill.1996). Under Judge Fines' order, then, a fee of $800 or less will be considered presumptively reasonable in a no-asset consumer bankruptcy, but in order to receive a higher fee, Geraci will be required to establish its reasonableness by documenting the legal services provided. Upset at being ordered to disgorge a portion of fees that he says were fairly negotiated in the marketplace, Geraci appealed the bankruptcy court's decision to the district court, but that court agreed with Judge Fines and thus affirmed his order. *Geraci v. Hopper*, 208 B.R. 907 (C.D.Ill.1997). Geraci now takes a further appeal, invoking this court's jurisdiction under 28 U.S.C. § 158(d). We likewise affirm.

I.

Each of the twelve cases presently before us is a consumer bankruptcy filed by the Geraci firm under Chapter 7 of the Bankruptcy Code. Judge Fines characterized the cases as "relatively simple, no-asset" matters requiring minimal attorney time. *Chellino*, 209 B.R. at 121.[1] The record reveals that Geraci originally charged the debtors in the twelve cases a flat fee of between $1,095 and $1,900.[2] The Chapter 7 trustee in one of the

---

1. Geraci told the bankruptcy court, in fact, that he "rarely, if ever, files an asset case." *Id.* at 120.

2. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), Geraci was required to file a statement of the compensation he had received or would receive from his clients in connection with these cases. Section 329(a) provides that:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). Rule 2016(b) implements that directive:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

cases asked the bankruptcy court to review Geraci's $1,095 fee under section 329, and that led the United States Trustee to begin investigating the fees Geraci had charged in other Chapter 7 cases. Believing that those fees were unreasonably high in light of the uncomplicated nature of the cases at issue, the United States Trustee invoked Bankruptcy Rule 2017 to challenge the fees charged in the eleven additional cases before us. *See also* 11 U.S.C. § 307 (authorizing the United States Trustee to appear in such cases). The bankruptcy court conducted an initial hearing on the fee dispute and then ordered Geraci to submit a detailed itemization of the services provided by his firm for each of the twelve debtors. Geraci's initial response to the court's order did not detail those services at all, but instead included a diatribe directed against the Trustee and bankruptcy practitioners in the Central District of Illinois. Geraci concluded his response with a request that the Trustee be held in contempt for attempting to fix prices in consumer bankruptcy cases. Eventually, however, Geraci complied with the court's order by filing the fee itemizations, and the bankruptcy court then conducted a further hearing.

On December 27, 1996, the bankruptcy court issued a detailed opinion addressed to the fee issue. The court began by criticizing Geraci's fee itemizations because they failed to sufficiently describe the particular services performed and because they included a $75 per hour charge for "clerk time," which the court deemed to be noncompensable office overhead. *Chellino*, 209 B.R. at 114 & 123–24. Despite that, Judge Fines was able to glean the following from Geraci's fee itemizations:

> From its review of the twelve cases at bar, the Court concludes that, while these cases involve different debtors, different creditors, and other subtle differences, these cases are essentially the same type of case. These cases are all simple, no-asset Chapter 7 cases that involved very little time in Court. Only one of the cases had a priority creditor, and all of the cases had relatively few total creditors. No mo-

tions to avoid liens were filed in any of these cases, and there were only two cases in which there were motions filed relating to anything other than the issue at hand. Some reaffirmations were filed in these cases, but the number filed in each case was relatively normal. In all but one case, the number of reaffirmations actually filed was less than the number that Debtors stated they intended to file. In all but one of the cases, the only other Court appearance by Debtor's Counsel, besides the § 341 hearing, was on the fee matters at bar.

*Id.* at 114. The bankruptcy court then looked to the criteria delineated in 11 U.S.C. § 330 for the compensation of professionals and addressed those criteria in the context of carefully considering each of the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), for assessing the reasonableness of an attorney's fee. With respect to the fifth *Johnson* factor—the customary fee in similar cases—the bankruptcy court found from evidence presented by the Trustee and from his own review of court records that the average fee charged in the locale for a no-asset consumer bankruptcy was $550. *Chellino*, 209 B.R. at 120–21. The court then found that neither the experience, reputation, and ability of the attorneys from the Geraci firm, nor the results they had been able to obtain for their clients, justified the significantly higher fees they had charged. Judge Fines noted that although Peter Francis Geraci described himself to the court as the "foremost consumer bankruptcy practitioner in the country,"

> the attorneys whose names appear most on the fee itemizations in question and the attorneys who have appeared before this Court are relatively inexperienced. Neither the fee itemizations or the experience of this Court indicate that Mr. Geraci himself has spent any significant amount of time on the cases at hand. The work product of Debtors' Counsel is not extraordinary. It is not outstanding. It is not up to a level that this Court sees from the

Bankr.R. 2016(b). Geraci's statements reveal that his compensation in the twelve cases ranged

from a low of $1,095 in four of the cases to a high of $1,900 in a single case.

majority of practitioners who regularly appear before it.

*Id.* at 122 (footnote omitted). Judge Fines further found that the results the Geraci firm had been able to obtain for its clients in the twelve cases were nothing out of the ordinary:

> Mr. Geraci argues that his firm provides top-notch service. However, as the Court has noted, the fee itemizations and the Addendum to those fee itemizations do not support a finding that superior, expert service was provided to the Debtors in the cases presently before the Court. No outstanding results were achieved in these cases, and the Court finds no extraordinary benefits for either the Debtors or their creditors. The cases presently before the Court would have seen the same result had the services been performed by any competent counsel in a competent manner.

*Id.* at 121. Based upon these findings, the bankruptcy court concluded that the reasonable value of the Geraci firm's services in each of the twelve cases was $800. The court noted that the $800 figure was $250 more than the $550 average charged for similar services in the relevant locale. The court therefore ordered Geraci to return to each debtor that portion of his fee that exceeded $800. The court made its order applicable to all present and future cases filed in that court by the Geraci firm, meaning that Geraci either could accept a presumptively reasonable fee of $800 in no-asset consumer bankruptcy cases under Chapter 7, or file a detailed fee itemization in support of a higher fee. *Id.* at 124. When Geraci then appealed to the district court pursuant to 28 U.S.C. § 158(a), that court affirmed Judge Fines' order in its entirety.[3]

3. Having successfully challenged Geraci's fees before Judge Fines, the United States Trustee then brought similar challenges before other bankruptcy judges in the Central and Southern Districts of Illinois. The Trustee's actions have resulted in a series of orders similar to the one we consider here. *See In re Crivilare,* 213 B.R. 721, 724 (Bankr.S.D.Ill.1997) (Meyers, J.) (fee of $700 presumptively reasonable; detailed fee itemization required for fees exceeding that amount); *In re Michaelson,* No. 96–83059, slip

II.

In ordering Geraci to return a portion of his fee to each of the twelve clients here, the bankruptcy court acted pursuant to 11 U.S.C. § 329(b) and Bankruptcy Rule 2017. Section 329(b) authorizes the court to assess the reasonable value of the services counsel provided to the debtor and to compare that value with the amount the debtor paid or agreed to pay for the attorney's services. If the court determines that the fee charged by the attorney is excessive— *i.e.,* that it exceeds the reasonable value of the services provided—then it may cancel any compensation agreement between the attorney and his client, or it may order the return of the excessive portion of the fee to the debtor's estate or to the entity making the payment. 11 U.S.C. § 329(b); *see In re Wiredyne, Inc.,* 3 F.3d 1125, 1127 (7th Cir. 1993); *see also In re Mahendra,* 131 F.3d 750, 758 (8th Cir.1997); *In re Hargis,* 895 F.2d 1025, 1025 (5th Cir.1990). In making the "reasonable value" determination, the bankruptcy court is to be guided by section 330 of the Bankruptcy Code, which sets forth a number of factors that Congress deemed relevant to an assessment of the value of professional services. *See Wiredyne,* 3 F.3d at 1128; *In re Basham,* 208 B.R. 926, 931 (9th Cir. BAP 1997); Lawrence P. King, *Collier on Bankruptcy* para. 329.04[1][c], at 329–19 (15th ed.1996).

Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable. *Mahendra,* 131 F.3d at 757; *Basham,* 208 B.R. at 931–32; *Collier on Bankruptcy* para. 329.05[6], at 329–28; *see also In re Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir.1994) (accounting firm had burden of proving its enti-

op. (Bankr.C.D.Ill. July 31, 1997) (Altenberger, C.J.) (fees over $900 require detailed fee itemization); *In re Day,* No. 96–7294, slip op. (Bankr. C.D.Ill. Mar. 6, 1997) (Lessen, J.) (fees over $600 require detailed fee itemization), *aff'd,* 213 B.R. 145 (C.D.Ill.1997). Geraci is refusing to take the Trustee's challenges to his fees lying down, however. He told us at oral argument that fee orders in 72 cases already have been appealed to this court and that approximately 400 more appeals are on their way.

tlement to fees and expenses under 11 U.S.C. § 330). Because fee determinations under section 329 rest within the sound discretion of the bankruptcy court, we will disturb an order requiring the return of an excessive fee only upon finding that the bankruptcy court abused its discretion. *Wiredyne*, 3 F.3d at 1128; *Basham*, 208 B.R. at 930; *see also Kenneth Leventhal & Co.*, 19 F.3d at 1177. And we may make that type of finding only if we are convinced that no reasonable person could agree with the bankruptcy court. *See In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 78 F.3d 285, 294 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 763, 136 L.Ed.2d 710 (1997). We are not so convinced in this case.

As we noted, the bankruptcy court made extensive findings relating to the value of the services provided by the Geraci firm to the various debtors here. The court first found that "[t]hese simple, straight-forward Chapter 7 bankruptcies do not take a significant amount of time or labor" and that Geraci's fee itemizations indicate that counsel spent an average of only thirty-six minutes preparing the various bankruptcy petitions. *Chellino*, 209 B.R. at 120. The court further found that the cases involved no novel or difficult issues, that no special expertise was required, that neither the clients nor the circumstances of the cases imposed any time restrictions on the Geraci firm, that the results obtained were simply ordinary, and that the performance of the Geraci lawyers was "not up to a level that [the bankruptcy court] sees from the majority of practitioners who regularly appear before it." *Id.* at 120–22. Those findings are supported by the record and have not been challenged in this appeal.

▪. The one finding that Geraci has contested relates to the customary fee in comparable cases. After considering the Trustee's evidence on the rates charged by area attorneys in straightforward Chapter 7 cases, and after conducting his own review of bankruptcy court records, Judge Fines found that the average fee charged in the locale for a no-asset consumer bankruptcy was $550. *Id.* at 120–21. Geraci does not suggest that this finding was erroneous. Nor does he dispute that his firm charged the twelve debtors here

two to four times that amount. Geraci's argument instead is that under 11 U.S.C. § 330(a)(3)(E), the bankruptcy court was required to compare his fees to those charged by comparably skilled attorneys *in non-bankruptcy cases*, not to the fees charged by bankruptcy practitioners in this specific type of bankruptcy case. Section 330 and its legislative history in fact express a congressional intent "that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." *In re UNR Indus., Inc.*, 986 F.2d 207, 209 (7th Cir.1993) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 329–30, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6286). But we do not think that gets Geraci very far in these cases. Geraci did not charge his clients by the hour, but quoted the clients a flat fee for the bundle of legal services required in a no-asset consumer bankruptcy. Thus, the bankruptcy court was unable to compare the hourly rates of Geraci lawyers to the rates charged by comparably skilled practitioners in non-bankruptcy cases. Rather, the court was left to contemplate what such a practitioner would charge for a comparable bundle of services in a non-bankruptcy case. Yet nothing in the record establishes what attorneys in the community would charge in a non-bankruptcy context for such a comparable bundle of services. Indeed, nothing in the record indicates that there even exists a comparable bundle of legal services to which the services here may be compared. The bankruptcy court seemed to view this type of bankruptcy case as unique, given its straightforward, uncomplicated nature, and the fact that the Geraci firm quoted its clients a flat fee for the limited legal services provided. In assessing the reasonable value of those services, then, the court looked to comparable charges in the locale for this type of simple no-asset consumer case. We find that in the circumstances of this case, the bankruptcy court did not abuse its discretion in doing so. *See Mahendra*, 131 F.3d at 758 ("Considering the lack of complexity and the customary legal fees that are awarded in this community for planning, preparing, and filing the necessary schedules and petition for a Chapter 7 case,"

the bankruptcy court did not err in setting a reasonable fee.).

 Geraci nonetheless relies on earlier decisions of this court, primarily on *In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir.1992), to argue that he is entitled to the market value of the services his firm provided, not simply to the value that the bankruptcy court somewhat arbitrarily assigned to those services. And the market value, Geraci tells us, is the price that he was able to negotiate with his debtor-clients in the marketplace. Geraci is correct that market rates generally are considered presumptively reasonable in fee litigation in this circuit (*e.g., Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993); *Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir.1992)), but his reliance on cases of that sort is misplaced in this context due to section 329(b) of the Bankruptcy Code. Neither *In re Continental Illinois Sec. Litig.* nor any of the other "market rate" cases Geraci cites involved section 329(b). As we indicated earlier, that section assigns to the bankruptcy court the task of determining the reasonable value of the services provided by a debtor's attorney. That reasonable value is not, as Geraci would have it, always the price that a willing debtor has agreed to pay a willing attorney in the marketplace, for by enacting sections 329 and 330 of the Code, Congress placed limits on the role the market will be permitted to play in setting professional fees in bankruptcy cases. *See Kenneth Leventhal & Co.*, 19 F.3d at 1178. Under section 329(b), the bankruptcy judge must determine the reasonable value of the services provided by the debtor's attorney after considering the surrounding facts and circumstances, including the customary fee in comparable cases. *See In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 608–09 (Bankr.E.D.Va.1985). It is clear, then, that under section 329, an attorney like Geraci is not always entitled to the fee that the debtor has agreed to pay him. If that were true, Congress would essentially have performed a meaningless act when it authorized bankruptcy courts to review the fees of debtors' counsel and to take either of the authorized actions if the fees are found to be excessive. *See* 11 U.S.C. § 329(b).

 To the extent Geraci acknowledges the bankruptcy court's powers under section 329(b), he asserts that those powers may be invoked only in two instances—where there is evidence of some type of overreaching on the part of debtor's counsel, or where counsel will be paid out of the bankruptcy estate and there has been no arm's length transaction to test the reasonableness of counsel's fee. In authorizing bankruptcy courts to review and to reduce an attorney's fee under section 329(b), Congress clearly was attempting both to prevent overreaching by debtors' counsel and to preserve the assets of the bankruptcy estate for the benefit of creditors. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess., at 329, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6285 ("Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny."). Yet nothing in section 329(b) suggests that the bankruptcy court's powers may be exercised only where the court has found some evidence of "overreaching," or where counsel's fee would impact the estate. Rather, the bankruptcy court is authorized to act whenever it determines that the compensation the debtor has paid or agreed to pay his counsel exceeds the reasonable value of the services provided. No further finding is required. Thus, in order to affirm Judge Fines' disgorgement order, we need not decide whether, as the Trustee suggests, it should be considered "overreaching" for the Geraci firm to charge two to four times the average rate in the relevant locale. No finding of "overreaching" or of an impact on the bankruptcy estate is required before counsel's fees may be reduced under section 329(b). The bankruptcy court therefore did not abuse its discretion by ordering Geraci to disgorge a portion of his fees without making such a finding.

 Having exhausted all viable challenges to the bankruptcy court's decision in these twelve cases, Geraci then shifts his focus to Judge Fines' decision to set a presumptively reasonable fee of $800 in all no-asset consumer bankruptcy cases filed by his

firm. Geraci contends that the bankruptcy court's order arbitrarily caps his fees at that amount, and that because the order applies only to him and not to other bankruptcy practitioners in the area, it violates his rights under the Equal Protection Clause. The district court found that Geraci had waived this constitutional challenge by failing to raise it before the bankruptcy court once the Trustee had requested Judge Fines to apply any holding on Geraci's fees to all pending and future cases filed by his firm.

Even if the argument was preserved, however, it is based on at least two flawed factual premises. The first is that there is any type of fee cap at issue in these cases. The bankruptcy court never placed any absolute limit on Geraci's fees; it instead required him to provide the court with an itemization of the services provided whenever his fee exceeds the presumptively reasonable amount. *Chellino*, 209 B.R. at 124–25. Given the number of routine, no-asset consumer cases handled by someone like Judge Fines, it is not an abuse of discretion for the court to set a presumptively reasonable fee and then to require documentation to substantiate a fee in excess of that amount. As one leading bankruptcy commentator explained it:

> A review of attorney's compensation is most appropriate in a nonbusiness or a consumer case under the Code. Local rules may place a presumptive limit on the amount of fees to be paid to the debtor's attorney for filing a consumer chapter 7 and chapter 13 case. By setting a standard maximum fee, courts seek to save time both for themselves and for debtors' attorneys in cases that are routine and quite similar to each other. Often, based on the [sic] their knowledge of the amount of time and effort necessary for a routine case, courts allow debtors' attorneys' fees within the standard maximum without requiring a detailed accounting of time spent.
>
> However, an attorney always has the right to demonstrate that additional fees should be awarded if the standard fee does not compensate the attorney fully for the time expended in the case on an hourly basis. Typically this will occur in cases that are more complex or require more time than the average case.

*Collier on Bankruptcy* ¶ 329.04[1][a], at 329–16 & 329–17.

▮ To the extent Geraci suggests that the bankruptcy court's order applies only to him and not to other bankruptcy practitioners appearing before Judge Fines, the record indicates otherwise. Although the opinion and order entered in these cases refers only to Geraci, the record suggests that Judge Fines utilizes the same presumptively reasonable fee in all similar cases on his docket. In fact, counsel for the United States Trustee told us at oral argument that the clerk's office in Danville, Illinois, where these cases originated, requires a detailed itemization statement in any no-asset consumer case where counsel discloses a fee in excess of the presumptively reasonable amount. It is clear, then, that Geraci has not been singled out for disparate treatment. *See also, e.g., In re Michaelson*, No. 96–83059, slip op. at 17 (Bankr.C.D.Ill. July 31, 1997) ("[Geraci] is treated no differently than any other attorney who appears before this Court. The only thing different about this Court's treatment of the attorney is that he has seen fit to challenge the review procedure, which works to set reasonable fees for bankruptcy cases, and in the process the attorney has conjured up the misconception that he is being singled out."). Accordingly, his equal protection claim must fail.

AFFIRMED.