In re Willard & Minnie PHILLIPS, Durwood & Barbara Ashley, Michael & Cynthia Nichols, J.C. Thames, James Gray, James E. & Jeanetta Murphy, Sr., Joe Boatman, Michael D. Huggins, Raymond D. Majewski, Willie & Thelma Hartley, Emma Arnett, Mary H. Williams, Johnny J. Brooks, Linda G. Branch, Camille N. Buchanan, Michael L. Rude, Keith D. Perry, Leslie A. Robinson, Denise Potter, James L. & Patsy R. Smith, Michael & Patricia Larson, Steven & Rebecca Parker, Elijah & Sybrina Shields, Sharon J. Muse, Floyd & Patsy Hall, Whitfield N. Beake, Ricky & Pamala Ann Yewell, Robert D. Black, John & Laura Ross, Jeffry & Olivia Church, Roger & Tina Hayes, Carolyn Bynum, James L. Bishop, Steven & Rene Gray, Lisa Jordan, Ernest & Sylvia Warfield, Edward M. Pierce, Franklin D. & Marilyn Odell, Sammy L. Davis, Rebecca Shaw, Emogene Moore, Mary E. Herron, Rebecca Anne Sater, Roy W. Cannon, Joseph & Delanya George, Wayne A. Skinner, Johnny & Robyn Vanlandingham, Charles & Tonya McGowan, Dwayne A. Blackwell, David & Debra Lindsey, Preston R. Butts, Jimmy C. Peel, David R. Tarrant, Mark & Sherry Plunkett, Woodard R. Joyner, Albert & Carolyn Williams, Gary K. & Nicole Martin, Stephanie Stern, Coy N. Haraway, Marilyn Tipton, Sonja Burks, Debtors.

Bankruptcy Nos. 91–20422, 92–29570, 93–25499, 93–26714, 93–26715, 93–31399, 94–20576, 94–20977, 94–24256, 94–24840, 94–27936, 94–29269, 94–29971, 94–29972, 94–33236, 95–22207, 95–22213, 95–22829, 95–24692, 95–26346, 95–27398, 95–27400, 95–29598, 95–30282, 95–31530, 95–32681, 95–32682, 95–33032, 95–33228, 95–34429, 96–20215, 96–20216, 96–20217, 96–22124, 96–22520, 96–23534, 96–27025, 96–27879, 96–29257, 96–31367, 96–32873, 96–33057, 96–33154, 96–33463, 96–33760, 96–33972, 96–34145, 96–35468, 96–36574, 96–36575, 97–20140, 97–20909, 97–25413, 97–26112, 97–28413, 97–29382, 97–30591, 97–30923, 97–31058 and 97–36152.

United States Bankruptcy Court,
W.D. Tennessee.

May 8, 1998.

**1003**

William A. Cohn, Cohn Law Firm, Cordova, TN, for Debtors.

George W. Stevenson, George W. Emerson, Jr., Memphis, TN, Chapter 13 Trustees.

Ellen Vergos, Memphis, TN, United States Trustee.

**MEMORANDUM OPINION AND ORDER DISALLOWING POSTPETITION CLAIMS OF WILLIAM A. COHN FOR ATTORNEY'S FEES AND EXPENSES, REQUIRING COMPLIANCE WITH § 330 OR DISGORGEMENT, AND SETTING ASIDE CERTAIN ADMINISTRATIVE ORDERS**

WILLIAM H. BROWN, Bankruptcy Judge.

These matters came to be heard upon the chapter 13 trustees' objections to the postpetition claims for attorney's fees and reimbursement of expenses of William A. Cohn ("Mr. Cohn"), attorney for these chapter 13 debtors, based on Mr. Cohn's reliance upon 11 U.S.C. § 1305(a)(2). By the consent of all parties and Bankruptcy Judges David S. Kennedy and Jennie D. Latta, and for the interests of judicial economy and convenience of the parties, several of the identical procedural matters in the cases listed above were transferred for this special and limited purpose from Judges Kennedy and Latta's calendars to be heard and decided by this Court. Based upon the statements of Mr. Cohn and the chapter 13 trustees, the testimony of several debtors, and the entire record in these contested matters, the Court determines that Mr. Cohn's postpetition claims for attorney's fees and expenses in these cases should be disallowed at this time for procedural reasons, that the appropriate procedure for requesting such postpetition fees and reimbursement of expenses is an application filed pursuant to 11 U.S.C. § 330 and to be accompanied with appropriate time and expense records, and that Mr. Cohn must now, within the time fixed, either file an appropriate § 330(a)(4)(B) application in each of these cases or promptly disgorge the fees and reimbursement of expenses received as a result of his postpetition claims filed in these cases. The following constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052, FED.R.BANKR.P.

**Factual Summary**

Mr. Cohn represents the following debtors in their chapter 13 bankruptcy cases, and he had received approval of initial fees in each case but two pursuant to orders of confirmation. He has filed postpetition claims for services rendered to these debtors after confirmation ("postconfirmation claims"), relying upon § 1305(a)(2) of the Bankruptcy Code, in which he sought attorney's fees and reimbursement of expenses in the amounts indicated in the following table. The table also indicates in its last column the amounts paid to Mr. Cohn in those cases where the chapter 13 trustees routinely submitted administrative orders to the Court that allowed the postpetition claims. The Court finds that these administrative orders were entered in error or by mistake and will vacate such orders on its own initiative.

| Chapter 13 Debtor and Case Number | Initial Fee in Confirmation Order | Fee(s) and Expenses Claimed Post-confirmation | Principal Paid (as of 4–2–98) |
|---|---|---|---|
| Phillips (91–20422) | $700 | $450, $287.50, $587.50, & $375.43 | $45, $28.75, $58.75, & $37.54 |
| Ashley (92–29570) | $ –0– | $435 | $136.38 |
| Nichols (93–25499) | $700 | $475 & $450 | $46.85 |

| Chapter 13 Debtor and Case Number | Initial Fee in Confirmation Order | Fee(s) and Expenses Claimed Post-confirmation | Principal Paid (as of 4–2–98) |
|---|---|---|---|
| Thames (93–26714) | $700 | $450 & $475 | $36.80 |
| Gray (93–26715) | $700 | $200 | $ –0– |
| Murphy (93–31399) | $700 | $450 | $ –0– |
| Boatman (94–20576) | $700 | $450 | $ –0– |
| Huggins (94–20977) | $700 | $2,865.25 | $188.22 |
| Majewski (94–24256) | $800 | $450 & $375 | $ –0– |
| Hartley (94–24840) | $800 | $450, $557.41, $450, $450, & $450 | $85.06, $116.73, $85.06, $85.06, & $85.06 |
| Arnett (94–27936) | $700 | $700 | $ –0– |
| Williams (94–29269) | $800 | $550, $375, & $450 | $ –0– |
| Brooks (94–29971) | $700 | $450 & $925 | $ –0– |
| Branch (94–29972) | $700 | $450 & $700 | $95.74 & $360.49 |
| Buchanan (94–33236) | $700 | $450 | $233.71 |
| Rude (95–22207) | $700 | $450 & $450 | $ –0– |
| Perry (95–22213) | $800 | $450 | $ –0– |
| Robinson (95–22829) | $800 | $450 | $ –0– |
| Potter (95–24692) | $800 | $450 | $ –0– |
| Smith (95–26346) | $800 | $450 | $ –0– |
| Larson (95–27398) | $800 | $450, $1663, & $187.50 | $ –0– |
| Parker (95–27400) | $800 | $550 & $450 | $ –0– |
| Shields (95–29598) | $ –0– | $450 & $450 | $ –0– |
| Muse (95–30282) | $800 | $450 | $ –0– |
| Hall (95–31530) | $800 | $450 | $ –0– |
| Beake (95–32681) | $950 | $450 & $450 | $ –0– |
| Yewell (95–32682) | $800 | $450 | $ –0– |
| Black (95–33032) | $950 | $450 & $1700 | $ –0– |
| Ross (95–33228) | $800 | $1800 & $395 | $ –0– |
| Church (95–34429) | $950 | $450 | $ –0– |

| Chapter 13 Debtor and Case Number | Initial Fee in Confirmation Order | Fee(s) and Expenses Claimed Post-confirmation | Principal Paid (as of 4-2-98) |
|---|---|---|---|
| Hayes (96–20215) | $950 | $450 | $ –0– |
| Bynum (96–20216) | $950 | $800, $450, $450, & $450 | $ –0– |
| Bishop (96–20217) | $950 | $450 & $450 | $ –0– |
| Gray (96–22124) | $950 | $450 | $ –0– |
| Warfield (96–23534) | $950 | $450 | $ –0– |
| Pierce (96–27025) | $950 | $450 & $450 | $ –0– |
| Odell (96–27879) | $950 | $450, $450, & $450 | $ –0– |
| Davis (96–29257) | $950 | $450 | $ –0– |
| Shaw (96–31367) | $950 | $450 | $ –0– |
| Moore (96–32873) | $950 | $450 | $ –0– |
| Herron (96–33057) | $950 | $450, $450, & $450 | $48.93, $48.93, & $43.79 |
| Sater (96–33154) | $950 | $450 | $ –0– |
| Cannon (96–33463) | $950 | $450 | $ –0– |
| George (96–33760) | $950 | $450 | $ –0– |
| Skinner (96–33972) | $950 | $450 | $ –0– |
| Vanlandingham (96–35078) | $950 | $450 & $450 | $ –0– |
| McGowan (96–34145) | $950 | $450 | $42.16 |
| Blackwell (96–35468) | $950 | $450 | $ –0– |
| Lindsey (96–36574) | $950 | $450 | $ –0– |
| Butts (96–36575) | $950 | $450 | $ –0– |
| Peel (97–20140) | $750 | $450 | $ –0– |
| Tarrant (97–20909) | $950 | $450 | $ –0– |
| Plunkett (97–25413) | $950 | $450 | $ –0– |
| Joyner (97–26112) | $950 | $450 & $450 | $ –0– |
| Williams (97–28413) | $950 | $450 | $ –0– |
| Martin (97–29382) | $950 | $450 | $ –0– |
| Stern (97–30591) | $950 | $450 | $ –0– |

| Chapter 13 Debtor and Case Number | Initial Fee in Confirmation Order | Fee(s) and Expenses Claimed Post-confirmation | Principal Paid (as of 4–2–98) |
|---|---|---|---|
| Haraway (97–30923) | $ –0– | $450 & $450 | $ –0– |
| Tipton (97–31058) | $950 | $450 | $ –0– |
| Burks (97–36152) | $950 | $450 | $ –0– |

The evidence indicates that filing postconfirmation claims for legal fees pursuant to § 1305(a)(2) is Mr. Cohn's routine procedure. The chapter 13 trustees offered into evidence Exhibit 1, which is a computer printout showing the status of Mr. Cohn's initial attorney's fees paid through his clients' chapter 13 plans, as well as the amounts of his postconfirmation claims for attorney's fees and reimbursement of expenses, and the amounts actually paid on those claims. Exhibit 1 indicates that Mr. Cohn has been paid a total of $16,433.58 as a result of such postconfirmation claims, with a larger amount still unpaid on those claims.

Some debtors appeared at the hearings on the trustees' objections to claims, and all were given the opportunity to testify. The testimony of several debtors and the statements of Mr. Cohn establish that Mr. Cohn generally charges his chapter 13 clients an initial fee to obtain confirmation of their chapter 13 plans and then thereafter bills his clients at an hourly rate for any additional work he performs for them postconfirmation. Mr. Cohn introduced his firm's general information booklet, a representative chapter 13 client contract, a client "Information About Bankruptcy"s and a client "Information ... Chapter 13 Plan," all offered as support of his position that he advised his chapter 13 bankruptcy clients of the above described fee agreement. Exhibit 2. Mr. Cohn stated that his current rate for his services is $200 per hour and that his associates' billing rates are set at $150 per hour, regardless of the amount of practice experience that a particular associate may have. Of the ninety-four separate claims at issue for services rendered postconfirmation and representing fees allegedly accrued at these hourly rates, sev-

enty-two of them are for a uniform amount of $450. Most, if not all, of the postconfirmation fees appear to be for routine legal work involving the generation and filing of one paragraph motions and brief orders. There was no proof that any of the fees were related to actual litigation in court. The testimony of the debtors, Mr. Tarrant, Mr. Perry, Ms. Williams, Ms. Muse, Mr. Gray, Ms. Phillips, Mr. Yewell, and Mr. Odell, established that it is the custom in Mr. Cohn's law office for an attorney to review Mr. Cohn's contract for legal services with the bankruptcy clients and to provide literature to each client regarding the various types of bankruptcy proceedings and procedures available. However, the debtors, Mr. Gray, Mr. Perry, Ms. Williams, Mr. Hartley, Ms. Phillips, and Ms. Muse, testified that they did not have a clear understanding of how the additional, postconfirmation fees were incurred and billed. Ms. Muse testified that, if she had received notice that Mr. Cohn was claiming additional fees of $450, she would have objected to the claim. Upon further examination by the chapter 13 trustee, however, Ms. Muse admitted that she would not have known how to go about objecting to the claim of her attorney.

### Discussion

Mr. Cohn relies exclusively on 11 U.S.C. § 1305(a)(2) as the statutory and procedural basis for filing postpetition claims for legal services rendered against his own clients. This section states:

1305. Filing and allowance of postpetition claims

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—

. . .

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

Without offering any support for his argument, Mr. Cohn asserts that Congress has established in § 1305(a)(2) an *alternative* to the § 330 and FED.R.BANKR.P. 2016 procedures for bankruptcy court approval of the compensation of professionals. Mr. Cohn, however, apparently failed to read the rest of § 1305. Section 1305(c) states:

(c) A claim filed under subsection (a)(2) of this section *shall* be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained. (emphasis added).

■■■ Bankruptcy Judge Keith M. Lundin, in his chapter 13 treatise, writes that a debt of the sort described in § 1305(a)(2) is "eligible for allowance if the claim holder files a proof of claim and if one of three conditions is satisfied: (1) prior approval of the trustee was obtained; (2) the claim holder did not know and should not have known of the need to get prior approval of the trustee; or, (3) the prior approval of the trustee was not practicable." Keith M. Lundin, 2 CHAPTER 13 BANKRUPTCY 2d Ed., § 7.38, p. 7–106 (1994). Obviously, the first condition has not been met in these cases since the chapter 13 trustee is objecting to the claims. The second condition implies a justifiable ignorance on the part of the claimant of the requirements of § 1305. The claimant here is a longtime practitioner before the bankruptcy court. One of the reasons that he gave at the hearings for the $200 hourly fees, which he charges his chapter 13 clients for postconfirmation work, is his high level of expertise in the area of bankruptcy law, including two certifications for specialization in that area. It is, therefore, inconceivable that Mr. Cohn can claim

that he is ignorant of the mandatory requirements of § 1305(c). As the court in *In re Thornton*, construing § 1305(c), held, "the holder of a post-petition claim who has notice or actual knowledge of a prospective debtor's petition in bankruptcy should be aware that the debtor is limited in his or her ability to incur debt," and the burden is then on the claimant to get approval if practicable. 21 B.R. 462, 464 (Bankr.W.D.Va.1982). It goes without saying that the claimant here had knowledge of the petitions in each case since he filed them.

■■ The claimant having failed to satisfy the first two conditions, the Court turns to the issue of the "practicability" of getting the trustee's prior approval. The legislative history states two examples of the kind of necessary postpetition expenses for which § 1305(a)(2) was enacted: "auto repairs in order that the debtor will be able to get to work, or medical bills." H.R.Rep. No. 595, 95th Cong., 1st Sess. 427–28 (1977) (reprinted in (1978) U.S.Code Cong. & Admin.News 5787, 5963, 6383); *see also*, *In re Trentham*, 145 B.R. 564 (Bankr.E.D.Tenn.1992); *RTO Rents v. Benson (In re Benson)*, 116 B.R. 606 (Bankr.S.D.Ohio 1990); *In re Nelson*, 27 B.R. 341 (Bankr.M.D.Ga.1983); *In re Thornton*, 21 B.R. 462. As noted in *Thornton*, "[i]n general, medical treatment is immediately necessary, and prior approval for incurring debt by accepting treatment is not practicable." 21 B.R. at 464. Based on the intent of Congress, as evidenced in the legislative history, and the interpretation of courts which have dealt with the issue, § 1305 contemplates exigent circumstances under which prior approval is clearly not practicable. Contrary to Mr. Cohn's argument, there is no indication that Congress intended routine legal work by a debtor's attorney to be within the purview of § 1305. Mr. Cohn made no showing whatsoever that any of the postconfirmation legal work he did was prompted by emergency situations that rendered obtaining the chapter 13 trustee's approval impractica-

ble. He has failed to satisfy the third condition set out by the Code and as explained by Judge Lundin.

Simply put, § 1305 is not the appropriate procedural vehicle for an attorney to seek to collect postpetition fees for providing routine legal services. That is clear from the plain language of the statute and the congressional intent behind its enactment. Allowing attorneys to utilize § 1305(a)(2) as a procedural vehicle for their compensation is fraught with potential problems since, under the procedure practiced by Mr. Cohn, neither the bankruptcy judge, creditors, nor Mr. Cohn's clients have meaningful notice of the claims nor meaningful opportunity to object to Mr. Cohn's additional fees. A prepetition proof of claim enjoys a presumption of its allowance, as the claim, if properly executed and filed, "constitute[s] prima facie evidence of the validity and amount of the claim." FED. R.BANKR.P. 3001(f); see also 11 U.S.C. § 502(a) (a claim filed under § 501 "is deemed allowed," absent an objection). No comparable presumption is given to postpetition claims under § 1305(a)(2); thus, care should be taken to assure adequate notice of postpetition claims.

Some of the problems posed by Mr. Cohn's § 1305(a)(2) procedure were highlighted at the hearings on April 1, 7, and 23, 1998, in the testimony of debtors who said they did not know for what services they were being charged and did not know how to object to the claims. Ms. Phillips, who testified at the hearing on April 7, stated that she was never made aware of any postconfirmation fees or expenses incurred and never received a statement indicating time billed for legal services rendered by Mr. Cohn. Ms. Phillips had no idea of what work or services generated the additional fees. On April 23, Mr. Hartley testified that he did not understand that he would be charged for postconfirma-

tion work. Thus, notwithstanding Mr. Cohn's contractual arrangements with his clients, his adopted procedure for collecting postconfirmation fees has left some of his clients uninformed.

Furthermore, assume arguendo that a debtor such as Ms. Phillips has paid into her chapter 13 plan for several years at the time her husband/codebtor suddenly dies.[1] Then assume that, in light of her circumstances, Ms. Phillips requests a hardship discharge pursuant to § 1328(b). If Mr. Cohn's practice of filing claims under § 1305(a)(2) is followed, Ms. Phillips' debt to Mr. Cohn arguably is not dischargeable unless Ms. Phillips obtained prior approval from the trustee to incur the debt as required for discharge by § 1328(d). Such a result is ludicrous, and such a scenario presents an intractable conflict of interest between the debtor and her attorney. Moreover, other uncomfortable potential questions are raised by the debtor's attorney seeking postconfirmation fees in this fashion.

The procedure, necessitated by the high-volume of chapter 13 cases filed in this judicial district, by which the judges approve "Administrative Orders Allowing Additional Claims" opens a potential for attorneys to "slip" possibly inflated fees into a debtor's plan. Mr. Cohn's filings of claims pursuant to § 1305(a)(2) are not accompanied by itemized statements of fees and expenses billed. In the instant cases, the Court was particularly dismayed to see the figure "$450" billed over and over for what appeared to be simple and very routine matters. There is something about such a consistent flat fee that suggests it is not based upon an hourly rate for actual work done. Some of the fees were in larger amounts, ranging up to $1,663 in the Larson case, $1700 in the Black case, and $1800 in the Ross case. Some of the cases had multiple charges, again typically $450.

1. These facts are true in Mrs. Phillips case. At the April 7 hearing, in fact, it was discovered that Mrs. Phillips had been paying into her chapter 13 plan well beyond its statutory time of five years. 11 U.S.C. § 1322(d).

It would seem to this Court, at the very least, that Mr. Cohn's theory that his procedure was more efficient is outweighed by the interests of full disclosure.

■ The more appropriate procedure for approval of postpetition attorney's fees and reimbursement of expenses, and one most often utilized by chapter 13 practitioners who seek fees or expenses in addition to those approved in a confirmation order, is an application for the court's approval of attorney's fees and expenses pursuant to § 330, which states, in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing...the court may award to a...professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the...attorney and by any paraprofessional person employed by such person; and

(B) reimbursement of actual, necessary expenses.

\*   \*   \*   \*   \*   \*

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

\*   \*   \*   \*   \*   \*

(4)(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

Section 330(a), which applies to employment of professional persons by a case trustee or chapter 11 debtor in possession, mandates that compensation is to be paid to such a professional person employed in a bankruptcy case only after notice and a hearing. *See, e.g., In re Hathaway Ranch Partnership,* 116 B.R. 208, 216 (Bankr.C.D.Cal.1990). The requirements of notice and a hearing are not specifically applicable to § 330(a)(4)(B) applications in chapters 12 or 13, but, notwithstanding the absence of a statutory mandate, such notice and hearing opportunity is crucial, since it provides the court, creditors, and the debtor an opportunity to review the amount of time expended to complete each task performed on the debtor's behalf, the hourly rates of the attorney, and the expenses incurred. Section 330(a)(4)(B) specifically applies to approval of fees for chapter 13 debtors' attorneys, and it directs the court to look to the factors set forth in section (a)(3)(A), as well as to "consideration of the *benefit and necessity of such services to the debtor.*" 11 U.S.C. § 330(a)(4)(B) (emphasis added). It is significant that the Code requires the court to award *only* reasonable fees "for representing the *interests of the [chapter 13] debtor.*" *Id.* (emphasis added). The statute says nothing about allowing fees merely to serve the interests of a debtor's attorney.

In *In re Geraci,* 138 F.3d 314 (7th Cir. 1998), that Court, upon review of applications

for attorney's fees in chapter 7 cases filed pursuant to § 330, noted that the bankruptcy court had found that "the work product of Debtors' Counsel is not extraordinary. It is not outstanding. It is not up to a level that this Court sees from the majority of practitioners who regularly appear before it," *Id.* at 317, and "the cases presently before the Court would have seen the same result had the services been performed by any competent counsel in a competent manner." *Id.* at 318. Although *Geraci* involved chapter 7 cases, the reasoning set forth by that Court is applicable to the cases at bar. Mr. Cohn's work in these matters is not "extraordinary" and in many cases amounted to drafting and filing a one or two paragraph motion. There was no proof that the motions giving rise to these fees were contested, and they routinely led to brief orders. Although the results may have been favorable to the debtors, fees must be allowed in the shared light of reasonableness, benefit and necessity. Mr. Cohn has not demonstrated that the postconfirmation work in these cases involved any "novel or difficult" issues, or that any special expertise was required. *See Geraci* at 318 (citing *In re Chellino*, 209 B.R. 106, 120–122 (Bankr.C.D.Ill.1996)). The Court is mindful, however, that upon filing of a documented § 330 application in a particular case, Mr. Cohn may establish grounds for a fee in addition to what that particular case's confirmation order allowed.

When considering an attorney's postpetition application for fees, the Court is bound by the Sixth Circuit's decision in *Boddy v. U.S. Bankruptcy Court*, 950 F.2d 334 (6th Cir.1991), a chapter 13 decision, which mandates that the bankruptcy court "must expressly calculate the lodestar amount when determining reasonable attorney's fees." *Id.* at 338. The "lodestar" amount is calculated by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." *Id.* at 337 (citing with approval to *Grant v. George Schumann Tire &*

*Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990), and *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). In order to calculate the lodestar amount, therefore, it is necessary for the Court to have some knowledge regarding the time expended by the attorney, with documentation such as the attorney's itemized billing records for a particular case. In reviewing the files for the bankruptcy matters presently before the Court, the Court has no information regarding the hours worked, the services performed, any travel time, or expenses. Moreover, the Court pointed out at one of the hearings that there was no factual basis to support an hourly rate of $150 to newly-admitted associate attorneys. In light of the foregoing, there is no basis presented upon which this Court may approve Mr. Cohn's postconfirmation fees or reimbursement of expenses.

Furthermore, the Court notes again that ethical issues are presented when an attorney files a postpetition claim against the bankruptcy estate of his client pursuant to § 1305(a), since the attorney and his client are then in a creditor/debtor posture while the bankruptcy case is pending. A similar problem may exist when the debtor's attorney files a § 330 application for fees and reimbursement of expenses, but the latter section's requirements of full disclosure and notice protect the debtor by assuring review of the attorney's application by both the chapter 13 trustee and the bankruptcy judge, as well as by the debtor. Rule 2002(a)(6), FED.R.BANKR.P., requires "at least 20 day's notice" of "hearings on all applications for compensation or reimbursement in excess of $500." When a debtor's attorney seeks postconfirmation fees or expenses, the practice in this district is to require a written application for *all* fees and reimbursement of *all* expenses in that case, which would include time and expense documentation to justify both the amount contained in the confirmation order and the postconfirmation request. The

total amounts for which court approval would be sought typically would exceed $500, thus mandating the full notice of Rule 2002(a)(6).

Canon 5 of the Code of Professional Responsibility, adopted by the Tennessee Supreme Court as Rule 8 of the Supreme Court Rules, states: "A lawyer should exercise independent professional judgment on behalf of a client." Ethical Consideration 5–1 goes on to specify as follows:

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. Neither the lawyer's personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute the lawyer's loyalty to the client.

In the cases of Mr. Cohn's clients, who will represent these debtors if they object, as some have verbally, to Mr. Cohn's § 1305(a)(2) claims? Under the procedure that Mr. Cohn is advocating, his clients may, in some instances, be forced to retain other counsel in order to object to Mr. Cohn's claim as a postpetition creditor. It is certainly true, as previously observed, that a § 330 application for postpetition fees may present similar issues; nevertheless, the apparent near-secrecy of the method used in these cases is a more obvious concern.

As an example of the ethical dilemma posed by the § 1305(a)(2) claims, one wonders how an attorney in Mr. Cohn's position could seek a reduction in the percentage to be paid to unsecured creditors by a particular debtor. These postpetition claims were filed as general unsecured claims rather than as administrative claims. It appears to the Court that, under these circumstances, Mr. Cohn's incentive as an unsecured creditor would be to promote payment of the highest percentage possible to unsecured creditors, thus positioning Mr. Cohn's interests in direct conflict with the potential interests of any clients who wished or needed to pay less

than 100%. Mr. Cohn states that he was not attempting to collect 100% of these postconfirmation fees since most of his clients' plans were confirmed at less than 100% to unsecured creditors, and that if he sought fees under § 330 they would be given administrative priority and paid 100%. The flaw in this theory is its apparent admission that the claimed fee is in excess of what is reasonably expected; thus, the process invites even more ethical issues. The Court notes that chapter 13 proofs of claims are submitted under penalty of perjury, and such claims must not be exaggerated.

■ It is of concern that, in some of these cases, fees have been allowed by entry of postconfirmation administrative orders. The claims allowance process in chapter 13 encourages the trustees to submit such orders allowing the claims but giving parties in interest an opportunity to object. That process has not worked to perfection, which is not surprising in view of the filing of 18,034 chapter 13 cases in this district in 1997. There are 35,658 chapter 13 cases pending at this time in this district, where 76% of the total filings are currently under this chapter. The chapter 13 trustees must accept some responsibility for not bringing these matters to the Court's attention in a more timely manner, and the Court must also accept some responsibility for failing to scrutinize more carefully its administrative orders allowing Mr. Cohn's claims. Pursuant to FED. R.BANKR.P. 9024, however, the Court has the authority to reconsider an order allowing a claim against an estate. Rule 9024 incorporates Fed.R.Civ.P. 60, which states in pertinent part:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) *mistake,* inadvertence, surprise, or excusable ne-

glect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or *(6) any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. (emphasis added)

*Compare* FED.R.BANKR.P. 3008, which provides: "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after hearing on notice shall enter an appropriate order." The relevant administrative orders were entered by mistake, at least mistake on the part of the Court. *See* Ahern and MacLean, BANKRUPTCY PROCEDURE MANUAL § 9024.03(1). The Court may correct its own mistake. *See Nicholson v. Isaacman (In re Isaacman),* 26 F.3d 629 (6th Cir.1994). Moreover, this Court also considers the application of subparagraph (b)(6) of Rule 60 to be appropriate. The United States Supreme Court has held that only those situations involving "extraordinary circumstances" will be granted relief pursuant to Rule 60(b)(6). *Ackermann v. U.S.,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). The Sixth Circuit has held that:

> Rule 60(b)(6) should apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v.*

*Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989) (citing *Pierce v. United Mine Workers,* 770 F.2d 449, 451 (6th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986)). Courts, however, must apply subsection (b)(6) only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Hopper,* 867 F.2d at 294... The difficulty in interpreting subsection (b)(6), and perhaps the reason for the paucity of decisions in this area, arises from the fact that almost every conceivable ground for relief is covered under the first three subsections of Rule 60(b). The "something more," then, must include unusual and extreme situations where principles of equity mandate relief.

*Olle v. Henry and Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990).

Something above and beyond the situations otherwise enumerated in Rule 60(b) must exist in order for an order or judgment to be set aside under subsection (b)(6). *In re King,* 214 B.R. 334 (Bankr.W.D.Tenn.1997). Based upon the facts of the consolidated cases, as well as the legal and ethical issues raised by the attorney's procedure for obtaining postpetition legal fees, this Court concludes that such extraordinary circumstances exist as to justify treating the trustees' objections as Rule 9024 motions for relief from the administrative orders and Rule 3008 motions to reconsider the allowances, as well as general objections to the allowance of Mr. Cohn's claims.

## Conclusion and Order

Based on the analysis above, each of Mr. Cohn's postpetition claims for fees filed under § 1305(a)(2) are disallowed for being procedurally defective. Mr. Cohn may, however, file written applications for fees and reimbursement of expenses to be supported by documentation evidencing time expended and

expenses incurred for each of these cases pursuant to § 330(a)(4)(B). In the event such applications are filed, Mr. Cohn, like all other attorneys in chapter 13, must document all time and expenses related to that case, not merely the postconfirmation time and expenses. While the orders of confirmation may have given presumptive approval of fees up to a certain amount, when the attorney is seeking more than the fee found in the confirmation order, that attorney must demonstrate that the total fees and expenses for that case are in compliance with § 330(a)(4)(B), which makes no distinction between pre- and postconfirmation services. Any such § 330(a)(4)(B) applications in these cases must be filed by Mr. Cohn on or before July 31, 1998, and in the event he chooses not to make such an application in one or more particular cases, Mr. Cohn shall, on or before August 14, 1998, disgorge the full amount of postconfirmation fees and expenses received in such case(s) by paying such amount(s) to the applicable chapter 13 trustee, or directly to the debtor if that particular case has been closed. The chapter 13 trustees shall report to the Court, by appropriate pleading on or before August 31, 1998, the status of Mr. Cohn's compliance with this Order.

The chapter 13 trustees have filed a fee audit of all of Mr. Cohn's pending bankruptcy cases. Exhibit 1. The Court, after review of said audit, hereby orders that no further payments shall be made by the chapter 13 trustees on Mr. Cohn's postconfirmation fees, as shown on Exhibit 1, pending further orders of this Court, or orders of Judges Kennedy or Latta in those cases assigned to them.

Further, all prior administrative orders approving Mr. Cohn's postconfirmation attorney's fees or expenses requested pursuant to his § 1305(a)(2) procedure shall be vacated, pursuant to FED.R.CIV.P. 60(b)(1) and (6), as incorporated by FED.R.BANKR.P. 9024, and

pursuant to FED.R.BANKR.P. 3008, in compliance with this Order.

The terms of this Memorandum Opinion and Order apply to all postconfirmation claims made by Mr. Cohn, the Cohn Law Firm, its associates or paraprofessionals, or attorneys of counsel to that firm. A copy of this Opinion and Order shall be entered in each of the above-listed cases, and a copy shall be mailed by the Clerk of this Court to each of the listed debtors, Mr. Cohn, the Cohn Law Firm, the chapter 13 trustees, and the United States trustee.