IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2003

# CHARLES F. GALBREATH v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 02C-10     James L. Weatherford, Senior Judge, by designation**

---

**No. M2002-02505-SC-R3-CV - Filed December 29, 2003**

---

We have this case on direct appeal, pursuant to Tennessee Supreme Court Rule 9, section 1.3, from the judgment of the circuit court approving the order of a hearing committee of the Board of Professional Responsibility that suspended Charles F. Galbreath, the appellant, from the practice of law for a thirty-day period. The circuit court essentially adopted the findings of fact and conclusions of law entered by the hearing committee. Galbreath does not contest those factual findings but argues that the sanction imposed is excessive. Upon review of the record and applicable authority, we conclude that the thirty-day suspension is appropriate. Accordingly, we affirm the judgment of the circuit court.

**Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Circuit Court Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., and BEN H. CANTRELL, SP.J., joined. E. RILEY ANDERSON, J., not participating.

Charles Galbreath, Nashville, Tennessee, Pro Se.

James A. Vick, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

### I. Facts and Procedural History

On October 7, 1947, the Tennessee Board of Law Examiners licensed Charles F. Galbreath, and he has been actively engaged in the legal profession from that date to the present. Before us are two disciplinary complaints lodged against Galbreath by chancellors of the Chancery Court for Davidson County. The first complaint, which was initiated by Chancellor Irvin H. Kilcrease, Jr., on

May 20, 1998, involved threatening letters sent by Galbreath to judges.[1] The second complaint, filed by Chancellor Ellen Hobbs Lyle on October 15, 1999, arose from an incident in which Galbreath, in open court, referred to Lyle as "honey."

Even though Galbreath does not contest the factual basis of either complaint, we think it necessary to chronicle the facts of each and to summarize the findings of the hearing committee so as to provide an appropriate context for our discussion.

## A. The Kilcrease Complaint

Irvin H. Kilcrease, Jr., Chancellor, Chancery Court of Davidson County, presided in a case filed against Galbreath and his wife for breach of contract; they filed an answer and counterclaim.[2] Ruling that the counterclaim had no merit and should not proceed, Kilcrease entered an order dismissing it with prejudice. As counsel of record, Galbreath sought reconsideration of the dismissal.[3] Subsequently, Kilcrease entered an additional order characterizing the counterclaim as "frivolous" and in violation of Rule 11 of the Tennessee Rules of Civil Procedure.[4] As a consequence, Kilcrease awarded judgment against Galbreath and his wife for $2,500 in favor of the counterdefendant. After unsuccessful attempts to persuade Kilcrease to vacate the Rule 11 sanction, Galbreath sought Kilcrease's recusal.

On December 23, 1996, Galbreath wrote a letter to Marietta Shipley, Judge of the Second Circuit Court of Davidson County, praising her recusal from a case in which he had represented one of the parties.[5] He sent a copy of the letter to Kilcrease and to all other Davidson County trial judges as well. Galbreath does not dispute the conclusion that this letter was intended to influence Kilcrease to recuse himself from the contract case then before him.

---

[1]Kilcrease's complaint included an additional matter which surfaced in a letter that Galbreath sent to then Chief Justice E. Riley Anderson. The hearing committee determined that this letter was in violation of Tennessee Supreme Court Rule 8, Code of Professional Responsibility (2002). Although Chief Justice Anderson never made a direct complaint, the letter he received from Galbreath is part of the record, was considered by the hearing committee, and is included in the committee's findings of fact and conclusions of law.

[2]At this time, Galbreath and his wife were represented by Gerald Burkett, Esq.

[3]From this point forward, Galbreath represented himself and his wife.

[4]The order from Kilcrease does not specify which section of Rule 11 of the Tennessee Rules of Civil Procedure Galbreath violated.

[5]The case was Willie Louise Ridley v. Correction Corporation of America, Davidson County Circuit No. 96C-4434. After initially refusing to recuse herself, Shipley did recuse herself in that case after Galbreath filed a complaint against her in the Court of the Judiciary.

On January 13, 1997, Galbreath wrote a letter to Kilcrease expressing concern that Kilcrease had doubted Galbreath's trustworthiness[6] and asked, again, that Kilcrease recuse himself. Additionally, Galbreath alluded to Shipley's initial refusal to recuse herself and her change of mind after Galbreath had filed a complaint against her in the Court of the Judiciary. Moreover, Galbreath failed to deliver a copy of this letter to the lawyers representing the other parties in the case.

Kilcrease entered an order on January 22, 1997, granting the plaintiff's motion for summary judgment and ordering Galbreath to pay $5,450 as attorney's fees to the plaintiff. Reacting to these orders, Galbreath wrote a second letter to Kilcrease on February 12, 1997, in which he again stated his perception that Kilcrease had branded Galbreath's testimony as untruthful. This perception led Galbreath to demand an explanation from Kilcrease, and he insisted that Kilcrease recuse himself in all cases in which Galbreath was or would be involved. Refusing to recuse himself, Kilcrease entered a final order dismissing the counterclaim in October 1997.

On December 19, 1997, Galbreath wrote a letter to then Chief Justice E. Riley Anderson and sent copies to counsel for the Court of the Judiciary and to Kilcrease. In addition to requesting the Chief Justice's permission to bypass Kilcrease in any future suits he may file, Galbreath admonished the Chief Justice and threatened him in the following specifics:

1. After chiding the Chief Justice for the Supreme Court's failure to designate him to preside in cases, Galbreath threatened to file a complaint in the Court of the Judiciary against the Chief Justice should the Supreme Court continue to exclude him from designation;

2. Galbreath threatened to publish his grievances against the Chief Justice on his radio program[7] should the Chief Justice fail to respond with a "fair approach" to the demand; and

3. Galbreath attempted to pressure the Chief Justice to procure Kilcrease's recusal.

On January 13, 1998, Kilcrease did recuse himself. Galbreath appealed Kilcrease's judgment regarding the counterclaim, summary judgment, and Rule 11 monetary sanctions. The Court of Appeals affirmed Kilcrease's judgment, and this Court denied Galbreath's application for permission to appeal. On remand, Chancellor Ellen Hobbs Lyle entered a final judgment on December 21, 1999, assessing attorney's fees against Galbreath in the total amount of $9,413.28.

## B. The Lyle Complaint

On October 4, 1999, during a regular court proceeding, Galbreath addressed Lyle as "honey."

---

[6]We note here that Kilcrease never made a specific finding that Galbreath had testified untruthfully or falsely.

[7]Galbreath was apparently the host of a local weekly call-in radio program in which he addressed legal topics.

Lyle immediately recessed the proceedings. Upon their resumption, Galbreath apologized, explaining that it was his custom to address "nice looking women" as "honey."

## C. The Complaint Proceedings

Both Kilcrease and Lyle initiated disciplinary complaints against Galbreath. The two complaints were duly referred to a hearing committee of the Board of Professional Responsibility ("Board") for consideration. Pursuant to Supreme Court Rule 9, sections 6 and 8 (2002), the three-member hearing committee conducted an evidentiary hearing during which Galbreath testified. At the hearing, Galbreath admitted the conduct upon which the complaints were based; he sought, however, to cast the conduct as benign and well-intended.

The hearing committee concluded that Galbreath's conduct violated several disciplinary rules of Tennessee Supreme Court Rule 8 (2002).[8] Galbreath's three threatening letters (two to Kilcrease and one to Chief Justice Anderson) violated Disciplinary Rule ("DR") 1-102(1), (5) and (6).[9] Galbreath's undignified and discourteous conduct toward Lyle violated DR 7-106(C)(6).[10] Lastly, Galbreath's January 13, 1997, *ex parte* letter to Kilcrease violated DR 7-110(B)(2).[11] In addition, the hearing committee found the existence of several aggravating factors, including the following:

1. Galbreath has practiced law for over 50 years and is very experienced in the practice of law;

---

[8]The proceedings in this case are governed by the Code of Professional Responsibility previously set forth in Rule 8 of the Tennessee Supreme Court Rules (2002). The Code was replaced on March 1, 2003, by the Rules of Professional Conduct.

[9]DR 1-102. Misconduct
    (A) A lawyer shall not:
        (1) Violate a Disciplinary Rule.
        . . . .
        (5) Engage in conduct that is prejudicial to the administration of justice.
        (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

[10]DR 7-106. Trial Conduct
    (C) In appearing in a professional capacity before a tribunal, a lawyer shall not:
        . . . .
        (6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

[11]DR 7-110. Contact With Officials
    (B) In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:
        . . . .
        (2) In writing if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party if that party is not represented by a lawyer.

2.      Galbreath has three prior disciplinary offenses;[12]

3.      Galbreath has displayed an ongoing pattern of misconduct as evidenced by the three threatening letters he wrote to sitting judges on separate occasions; and

4.      Galbreath has refused to acknowledge the wrongful nature of his conduct.

The hearing committee found no mitigating factors and, accordingly, ordered that Galbreath's license be suspended for a period of thirty days.

Galbreath appealed the hearing committee's order to the Circuit Court for Davidson County pursuant to Tennessee Supreme Court Rule 9, section 1.3.[13]  The trial court adopted the hearing committee's findings of fact and conclusions of law.[14]  The trial court also approved the sanction imposed by the hearing committee–the thirty-day suspension–and entered it as the judgment.  As is provided by Tennessee Supreme Court Rule 9, section 1.3, Galbreath appealed directly to this Court.

## II.  Standard of Review

Tennessee Supreme Court Rule 9, section 1.3 provides that a party may appeal the judgment of the circuit or chancery court directly to the Supreme Court.  When rendering a decision on the appeal, the Supreme Court reviews the transcript of the record from the chancery or circuit court, which includes the transcript of evidence before the hearing committee.  Tenn. Sup. Ct. R. 9, § 1.3. This Court's review of the trial court's decision is de novo, with a presumption that the trial court's findings are correct unless the preponderance of the evidence is otherwise.  Sneed v. Bd. of Prof'l Responsibility, 37 S.W.3d 886, 890 (Tenn. 2000).

---

[12]Since 1947, Galbreath has been sanctioned by the Board several times.  On November 13, 1980, the Board issued an informal admonition against Galbreath.  On June 20, 1984, the Board issued a public censure against Galbreath. On March 24, 1992, the Board issued a private reprimand against Galbreath.

[13]According to Tennessee Supreme Court Rule 9, section 1.3 (2002):

The respondent or the Board may have a review of the judgment of a hearing committee in the manner provided by T.C.A. [§ 27-9-101 et seq.], except as otherwise provided herein.  The review shall be on the transcript of the evidence before the hearing committee, its findings and judgment and upon such other proof as either party may desire to introduce.  The trial judge shall weigh the evidence and determine the facts by the preponderance of the proof.  Either party dissatisfied with the decree of the circuit or chancery court may prosecute an appeal direct to the Supreme Court where the cause shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing committee.  Prior decisions of this Court holding that appeal of disciplinary proceedings must be taken to the Court of Appeals because T.C.A. [§ 16-4-108] so requires are expressly overruled.

[14]Kilcrease testified at the circuit court proceedings that he had construed Galbreath's letters as containing threats.

III.  Analysis

The crux of Galbreath's appeal is his contention that the thirty-day suspension is excessive, and he suggests that public censure[15] would be a more appropriate sanction for two reasons.  First, he contends that his actions did not harm anyone; second, he asserts that the hearing committee failed to apply the following mitigating factors:  (1) he has already been sanctioned for his Rule 11 violation by the court in which the conduct took place; (2) he has a record of improving the judiciary and practice of law; and (3) other attorneys have received less severe sanctions for more serious offenses.

In support of the thirty-day suspension, the Board cites the presence of aggravating factors noted above, the absence of mitigating factors, and the entire record.  Thus, our task is to review the record anew to determine whether the thirty-day suspension is supported by a preponderance of the evidence.

Before addressing Galbreath's contentions, perhaps a brief statement of the Supreme Court's authority in disciplinary proceedings will be contextually helpful.  The Court maintains disciplinary authority over attorneys admitted to practice law in the state of Tennessee.  Tenn. Sup. Ct. R. 9, § 1.1 (2003).  It is well settled that the Supreme Court has the "essential and fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys."  In re Burson, 909 S.W.2d 768, 773 (Tenn. 1995).

We now address Galbreath's contention that the thirty-day suspension is excessive, and we consider his assertion that his actions did not harm anyone.  It is true, generally speaking, that the disciplinary rules are indeed designed for the protection of clients and the public.  But this responsibility is not exclusive.  There exists another duty, broader perhaps, that commands this Court to preserve and defend the judicial process and those to whom its administration is entrusted.  See Tenn. Sup. Ct. R. 8, DR 1-102(A) (2002); see also American Bar Association, Standards for Imposing Lawyer Sanctions 7 (1986).  In this regard, we note that in the context of lawyer discipline, the American Bar Association defines "injury" as "harm to a client, the public, the legal system or the profession which results from a lawyer's misconduct."  American Bar Association, Standards for Imposing Lawyer Sanctions 7 (1986).

Galbreath, dissatisfied with Kilcrease's rulings, began a calculated campaign, through threats and intimidation, to force Kilcrease's recusal.  This effort included sending two threatening letters

---

[15]Public censure is an available sanction.  Tenn. Sup. Ct. R. 9, § 4.4 (2002).  According to Supreme Court Rule 9, section 8.1, the Board shall review the Disciplinary Counsel's recommendation to censure an attorney publicly; the respondent-attorney may not appeal the Board's decision but may request a formal hearing.  Id.  It appears that the Supreme Court only reviews the sanction of public censure if there is an appeal from the hearing committee's decision pursuant to Supreme Court Rule 9, section 1.3.

to Kilcrease and a threatening letter to Chief Justice Anderson intended to exert pressure on Kilcrease to recuse himself.[16] Galbreath, in his manifold efforts to force a judicial officer away from his official duty, clearly attempted to subvert the legal process to his will. In so doing, Galbreath has inflicted grievous injury upon the judicial process and upon Kilcrease as a judicial officer. The injury caused by this conduct alone justifies suspension.

The incident in which Galbreath referred to Lyle as "honey" underscores Galbreath's lack of respect for the judicial office and its processes. Such conduct alone justifies some type of discipline.

Perhaps most egregious was Galbreath's conduct toward the Chief Justice. In one chapter of a continuing saga[17] of Galbreath's attempts to force Chief Justice Anderson to assign him judicial duties, Galbreath suggested that if the Chief Justice did not assign him as requested, he would file a complaint against the Chief Justice and discuss the matter during a radio talk show of which Galbreath was the host. Galbreath's use of threats and intimidation designed to force the Chief Justice to perform a purely discretionary act evinces a persistent resolve to undermine and to bend the justice system to his will. In so doing, he has inflicted grievous injury upon the judicial process and upon the office of the Chief Justice. The injury caused by this conduct alone justifies suspension.

Galbreath next argues that certain mitigating factors apply. Even though the hearing committee rejected the mitigating factors suggested by Galbreath, we shall consider and discuss their application. First, Galbreath contends that the sanction should be reduced because Kilcrease and Lyle had already sanctioned him for his violation of Rule 11 of the Tennessee Rules of Civil Procedure. As authority, he cites Patty v. Board of Professional Responsibility, 90 S.W.3d 641, 645 (Tenn. 2002), for the proposition that the Court should consider other monetary sanctions already imposed by the lower courts and thereby reduce the Board's sanctions. In Patty, the Board originally recommended a one-year suspension, and upon review, the chancery court reduced it to sixty-days. Id. On appeal, we increased it to four months because the attorney had already been sanctioned (in the form of monetary damages) by the courts in which the conduct occurred. Id. at 645-46. However, the Patty case is distinguishable from the case before us. Patty's disciplinary violations directly resulted from his filing of two frivolous lawsuits; therefore, the Court properly considered monetary sanctions already imposed when determining additional sanctions such as suspension. Id.

---

[16]We note that while filing a motion to recuse is within Galbreath's rights, his use of threats and intimidation is not.

[17]Galbreath has filed at least three lawsuits in federal court against current and former chief justices of the Tennessee Supreme Court for their alleged failure to appoint Galbreath to sit as a retired judge. Each of these suits has been dismissed. See Tenn. *ex rel.* Galbreath v. Drowota, No. 3:02-0330 (M.D. Tenn. Jan. 14, 2003); Galbreath v. Anderson, et al., No. 3:00-0337 (M.D. Tenn. May 22, 2001); Galbreath v. Birch, et al., No. 3:96-1154,1997 WL 1038822 (M.D. Tenn. July 24, 1997), aff'd, 162 F.3d 1161 (table), 1998 WL 552752 (6th Cir. 1998).

at 644. In contrast, Galbreath's disciplinary violations are only tangentially related to his initial Rule 11 violation. Galbreath is being disciplined for his threatening letters sent to two judges, his inappropriate comment to a judge during a hearing, and an *ex parte* communication.[18] He is not being disciplined for a Rule 11 violation. Therefore, any fee or fine Galbreath was ordered to pay because of his Rule 11 violation has no bearing on the sanction imposed in this case.

Next, Galbreath offers in mitigation his "record of improving the judiciary and practice of law." Indeed, as a lawyer, public defender, legislator, and judge, Galbreath has done much to advance the administration of justice. His contributions include the sponsorship and support of innovative legislation which created the Court of Criminal Appeals,[19] provided the mechanism by which accused persons could waive jury trial,[20] ensured that indigent accused persons receive a trial transcript without costs,[21] and guaranteed the right of an arrestee to make a telephone call before being "booked."[22] Galbreath, however, has also been disciplined on three prior occasions.[23] Therefore, on balance, his contributions to the improvement of justice are diminished by his prior disciplinary sanctions.

Galbreath also suggests that his long years of practice should mitigate the sanction imposed. As noted below, the hearing committee found this very factor to be an aggravator. Obviously, long years of practice without discipline would tend to mitigate. On the other hand, long years of practice with several disciplinary sanctions would tend to have the opposite effect. In any event, this factor is not significant in mitigation.

The last mitigating factor Galbreath offers is his bare assertion that "other cases involving more serious offenses with prior admonitions that injured others merited less severe sanction than suspension." Galbreath has not cited us to any case and we have found none in support of this assertion.

Finally, in determining the appropriate sanction, we have considered the following aggravating factors found by the hearing committee and adopted by the trial court: (1) Galbreath's

---

[18]Galbreath sent an *ex parte* letter to Kilcrease which the hearing committee and the circuit court found violated Tennessee Supreme Court Rule 8, DR 7-110(B)(2). Galbreath does not dispute this finding.

[19]1967 Tenn. Pub. Acts ch. 226, § 1 (codified as Tenn. Code Ann. § 16-5-101 (2003)).

[20]Tenn. Code Ann. § 40-2504 (repealed) (codified and amended as Tenn. R. Crim. P. 23 (2003)).

[21]1965 Tenn. Pub. Acts ch. 221, § 12 (codified as Tenn. Code Ann. § 40-14-312 (2003)).

[22]1965 Tenn. Pub. Acts ch. 298, § 1 (codified as Tenn. Code Ann. § 40-7-106 (2003)).

[23]See supra note 12.

three prior disciplinary offenses; (2) Galbreath's substantial experience in the practice of law; and (3) Galbreath's refusal to acknowledge the wrongful nature of his conduct, which the hearing committee considered to be the most egregious aggravating factor. We conclude that the record supports the presence of these aggravating factors and the absence of any significant mitigating factors.

## IV. Conclusion

A thorough consideration of Galbreath's conduct together with the attendant aggravating and mitigating factors offered convinces this Court that the thirty-day suspension of Galbreath's privilege to practice law is appropriate. Accordingly, the judgment of the circuit court is affirmed. The suspension shall begin pursuant to Supreme Court Rule 9, section 18, and Galbreath shall fully comply with all applicable provisions thereunder. Costs are taxed against the appellant for which execution shall issue, if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE