# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 7, 2004 Session

# WILLIAM A. COHN v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-02-1099-1   J. Steven Stafford, Chancellor**

---

**W2003-01516-SC-R3-CV - Filed November 22, 2004**

---

This is a direct appeal in an attorney discipline case. For seven years, the appellant, an experienced bankruptcy attorney, collected post-confirmation attorney's fees from his debtor clients using a creditors' procedure which the Bankruptcy Court for the Western District of Tennessee found improper. Following the bankruptcy court's ruling, the Board of Professional Responsibility ("BPR") filed a petition for discipline alleging that the appellant had violated a number of ethical rules. A BPR hearing panel agreed and ordered a public censure, disgorgement of certain fees, and suspension until such time as disgorgement was made. Both the attorney and the Board appealed to the chancery court, which affirmed the public censure, modified the disgorgement order, and reversed the suspension. Both parties appealed to this Court. After our review of the record and applicable authority, we conclude that the chancery court properly affirmed the hearing panel's findings with regard to the appellant's violation of the disciplinary rules and that it correctly required disgorgement of post-confirmation attorney's fees, but that it erred in declining to impose a suspension. Accordingly, we affirm the chancery court's judgment in part, but we modify the judgment to vacate the public censure and instead impose a ninety-day suspension.

**Tenn. Sup. Ct. R. 9, Section 1.3; Judgment of the Trial Court Affirmed in Part, Reversed in Part.**

E. RILEY ANDERSON, J., delivered the opinion of the Court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

William A. Cohn, Memphis, Tennessee, Pro Se.

Jesse D. Joseph, Nashville, Tennessee, for the Appellee, Board of Professional Responsibility.

# OPINION

## BACKGROUND

In 1998, the Board of Professional Responsibility of the Supreme Court of Tennessee ("BPR" or the "Board") filed a disciplinary petition against the appellant, William A. Cohn. The petition was based on a United States Bankruptcy Court's finding that Cohn, an experienced bankruptcy attorney, had improperly collected attorney's fees from 1991 to 1998 by filing creditors' "proofs of claim" pursuant to 11 U.S.C. § 1305 rather than by filing detailed fee requests. The petition alleged that Cohn's actions not only violated federal bankruptcy law, but also violated numerous provisions of the Code of Professional Responsibility applicable to attorneys in Tennessee.

This case has a long history and is set against the somewhat Byzantine backdrop of federal bankruptcy law and procedure. Because some understanding of the bankruptcy procedures at issue is necessary to understand and evaluate Cohn's practices, we begin with a brief explanation of the applicable bankruptcy law.

### Chapter 13 Bankruptcy & Attorney's Fees

According to the record, Cohn represented Chapter 13 debtors in the cases at issue. Chapter 13 is a provision of the Bankruptcy Code allowing debt-ridden individuals to reorganize their financial affairs, paying off debt over a period of three to five years. Bankruptcy proceedings are commenced when debtors (or their attorneys) file a plan for repayment of debts with the bankruptcy court. The bankruptcy court approves the plan by "confirming" it. If the debtor successfully completes the payment plan, the debtor receives a discharge of all remaining debt. See 11 U.S.C. §§ 1301-07 (2004); see also 11 U.S.C. §§ 1321-28 (2004).

As discussed in the testimony before the BPR hearing panel, in bankruptcy proceedings, including those under Chapter 13, the debtor's finances are consolidated into a bankruptcy estate. The estate is overseen by a trustee who, among other duties, approves payments to creditors made out of the estate. The debtor makes periodic payments to the trustee, as established by the court's confirmation order, and the trustee distributes those payments to the creditors in accordance with the debtor's plan. The trustee's duties include approving proofs of creditor's claims filed under, inter alia, section 1305. 11 U.S.C. §§ 1302(b), 704 (2004).

Because the trustee represents the interests of the estate, rather than the interests of the debtor, Chapter 13 debtors are permitted to hire an attorney to represent their personal interests in the bankruptcy proceeding. The attorney's fees are paid out of the estate. The Chapter 13 debtor need not receive permission from the trustee to retain the attorney, but payments to the attorney must be approved by both the trustee and the court. 11 U.S.C. § 330 (2004), 11 U.S.C. § 1302; see also 11 U.S.C. § 704(5) (2004); Fed. R. Bankr. P. 2016.

2

The bankruptcy code contains two provisions dealing specifically with compensation of attorneys. First, section 330 provides that, in a Chapter 13 case, "the court may allow reasonable compensation to the debtor's attorney." 11 U.S.C. § 330(a)(4)(B).[1] Second, section 329 provides that any attorney who represented a debtor in connection with his or her bankruptcy must file "a statement of the compensation paid or agreed to be paid." 11 U.S.C. § 329(a) (2004); see also Fed. R. Bankr. P. 2016(a) (requiring that the statement be "detailed"). The Court of Appeals for the Sixth Circuit has held that the code's requirement that attorney's fees be "reasonable" requires courts to engage in a lodestar analysis when approving attorney's fees in Chapter 13 cases. In re Boddy, 950 F.2d 334, 337 (6th Cir. 1991) (holding that attorney's fees in bankruptcy cases must be calculated by determining "a reasonable hourly rate for the particular attorney handling the case and then multiply[ing] that rate by the reasonable hours worked on the case.").

Testimony before the BPR hearing panel, including that of the bankruptcy judge, the bankruptcy trustee, and two expert witnesses,[2] established that from 1991 to 1998, the normal practice for awarding attorney's fees in bankruptcy cases in the Western District of Tennessee pursuant to sections 329 and 330 was as follows. At the time a debtor retained an attorney to represent him or her, the client and the attorney would agree to a fee for the representation. Then, when the attorney filed the debtor's Chapter 13 case with the bankruptcy court, the attorney would also file a disclosure statement (as required by section 329) setting out the fee agreed upon with the client. If the agreed-upon fee was at or below an amount set by the bankruptcy court as presumptively reasonable (between $700 and $950 at the time of the cases at issue), then the bankruptcy court would approve the fee as a matter of course. That is, the court would not engage in the lodestar analysis required by the Sixth Circuit's In re Boddy decision, and so would not require any documentation of the attorney's time spent on the case.[3]

The testimony also established that this fee was understood to cover the attorney's representation of the debtor throughout the entire course of his or her bankruptcy (that is, for the entire three- to five-year period until discharge). The bankruptcy judge, the trustee, and the expert witnesses all testified before the hearing panel or by deposition that because of the high volume of bankruptcy cases handled by both the Bankruptcy Court for the Western District and the local bankruptcy bar, seeking additional fees was extremely rare. However, the witnesses agreed that if an attorney did wish to apply for additional fees due to unforeseen developments in the bankruptcy

---

[1] The full text of these statutes is set forth in the appendix.

[2] The hearing panel considered testimony from Western District Bankruptcy Judge William Brown, Chapter 13 Trustee George Stevenson, and expert witnesses Russell Savory, Edgar M. Rothschild III, and Ben G. Sissman. Mr. Savory and Mr. Sissman practice bankruptcy law in the Western District, and Mr. Rothschild practices in the Middle District of Tennessee.

[3] Payment of such attorney's fees is made a "priority" claim against the estate, meaning that the fees would be paid in full over the life of the debtor's Chapter 13 plan. In contrast, in most Chapter 13 plans, payments to unsecured creditors are paid at only a percentage of their face value (e.g., 10% or 25%), depending on the provisions of the debtor's plan.

3

case, the general practice was for the attorney to submit detailed time records from the inception of the case pursuant to 11 U.S.C. § 330 and Rule 2016.

## Cohn's Billing Method

Rather than applying for a fee only once, at the inception of the Chapter 13 case, Cohn testified before the Board, and the documentary evidence reflects, that his general practice was to divide his bankruptcy representation into two parts. First, he charged his clients an initial fee (i.e., the presumptively reasonable fee) to obtain confirmation of their Chapter 13 plans and submitted that fee to the court as his section 329 disclosure. The record shows that in Cohn's section 329 disclosures, he stated that "pursuant to a written contract," the fee was "for all work through and including confirmation."

Second, as provided in Cohn's written contract, Cohn agreed to bill his clients at an hourly rate for all additional work performed after the confirmation of the plan. This proposed billing was not disclosed as required by section 329. According to the testimony and documentary evidence, once a client incurred post-confirmation charges, Cohn did not bill his client, did not itemize his services or hours worked, and did not provide notice directly to the client. Rather than applying for attorney's fees by using section 330, which would have required submitting itemized billing, Cohn filed a proof of claim pursuant to section 1305 as a general creditor with the bankruptcy court for a specific sum, but did not identify the sum as attorney's fees.

Section 1305 provides that "a proof of claim may be filed by any entity that holds a claim against the debtor," provided the claim is for "a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan." 11 U.S.C. § 1305(a). However, such a claim "shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained." 11 U.S.C. § 1305(c). Examples of the "proof[s] of claim" authorized by this section and entered in the record reflect that it is a simple creditor's form requiring little detail and no supporting documentation. The trustee testified before the hearing panel that Cohn never obtained "prior approval" before filing these proofs of claim as a creditor under section 1305.

The trustee testified before the hearing panel that due to the high volume of cases and claims in the bankruptcy court,[4] proofs of claim under section 1305 were administratively approved by the trustee's office as a matter of course. Once the proof of claim was approved, a notice of the claim, stamped with the trustee's and the judge's signature, was sent to the client. Clients had ten days to object to the claim, after which no action could be taken by the client. If there was no objection, the

---

[4] In 1998, there were 35,658 Chapter 13 cases pending in the Western District of Tennessee. In re Phillips, 219 B.R. 1001, 1011 (Bankr. W.D. Tenn. 1998). Each case generates multiple claims; Trustee George Stevenson testified that the trustee's office processes approximately 560 claims per day.

fees were added to the estate as an unsecured claim, meaning they would be paid at whatever percentage of their face value had been approved by the court for the plan.

## Challenges to Cohn's Billing Method

In 1998, the Chapter 13 trustees brought an action in the bankruptcy court objecting to Cohn's section 1305 fee applications in sixty-one cases filed between 1991 and 1998. The cases were consolidated before Bankruptcy Judge William H. Brown, who ruled that Cohn's fee applications were improper. The court disallowed as "procedurally defective" all of the post-confirmation claims being challenged and vacated all previously-approved fee orders in the sixty-one cases. In re Phillips, 219 B.R. 1001, 1012 (Bankr. W.D. Tenn. 1998). The bankruptcy court ordered Cohn either to reapply for attorney's fees using section 330 of the bankruptcy code or to forfeit the fees. Id. The bankruptcy court later approved a settlement of the active cases only between Cohn and the trustees whereby the litigation was concluded upon Cohn repaying $2,436.85 to the trustees for post-confirmation fees improperly granted.

On October 28, 1998, after receiving a copy of In re Phillips, the Board of Professional Responsibility filed a Petition for Discipline alleging that Cohn's practice of filing the post-confirmation claims under section 1305 was unethical and in violation of several disciplinary rules. After considering the testimony and evidence outlined above, the BPR hearing panel released its written findings and ruled that Cohn had violated all of the disciplinary rules alleged in the petition, to wit:

DR 1-102(A)(1) (violating a disciplinary rule);

DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation);

DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice);

DR 1-102(A)(6) (engaging in conduct that adversely reflects on a lawyer's fitness to practice law);

DR 2-106(A) (contracting for, charging, or collecting an illegal or clearly excessive fee);

DR 7-101(A)(3) (failing to explain matters to the client such that the client may make an informed decision);

DR 7-101(A)(4)(c) (intentionally prejudicing or damaging the client during the course of the professional relationship);

DR 7-102(A)(3) (concealing or failing to disclose that which the lawyer is legally required to reveal);

DR 7-102(A)(8) (knowingly engaging in illegal conduct or conduct contrary to a Disciplinary Rule);

DR 7-106(C)(5) (failing to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving opposing counsel timely notice of an intent not to comply).

Based on its findings, and on the fact that Cohn had received four prior reprimands,[5] the hearing panel imposed three sanctions. First, the panel required Cohn to disgorge within sixty days all funds received from the sixty-one clients identified in the bankruptcy court opinion. Second, the panel ruled that should disgorgement not occur within sixty days, Cohn's license should be suspended "until such time as Cohn presents proof of payment to the satisfaction of the appropriate reinstatement committee." Finally, the panel ruled that Cohn should receive a public censure. The panel assigned costs to Cohn.

Both Cohn and the Board sought judicial review of the hearing panel's decision by filing petitions for certiorari in the Chancery Court for Shelby County. The trial court agreed with the hearing panel that Cohn had violated the disciplinary rules enumerated in the panel's judgment and affirmed the order of a public censure. The court required Cohn to disgorge $13,996.73 in post-confirmation fees to the bankruptcy court, calculated as the difference between the full amount of post-confirmation fees collected from the sixty-one clients ($16,433.58, according to the bankruptcy trustee's audit presented at the BPR hearing) and the amount Cohn had already paid to the bankruptcy court as part of the settlement of the active cases ($2,436.85). The trial court also held that the hearing panel had erred in imposing a suspension of Cohn's law license should he fail to make the required disgorgement. In reversing the suspension, the chancellor found that Cohn "should have known what the law was," but that "Mr. Cohn did not attempt to hide or in any way act surreptitiously" with regard to collecting the fees, that the trustees "took absolutely no action to let Mr. Cohn know that this procedure was not the approved procedure," and that Cohn "does make a plausible argument" that section 1305 is an alternative method for seeking fees.

Both the Board and Cohn appealed the decision of the trial court to this Court.

_____

[5] In 1987, Cohn received a private admonition for omitting the required disclaimer language from a print advertisement. In the same year, he received a separate private reprimand for three separate complaints against him (relating to failure to communicate with clients and to a dispute over fees). In 1995, Cohn received a private reprimand for "making negative comments concerning a judge." In 1997, Cohn received a private reprimand for improper advertising in the Yellow Pages.

## STANDARD OF REVIEW

In ruling upon an appeal from a Board of Professional Responsibility hearing panel, the trial court "shall review the evidence before the hearing committee, as well as the proof either party may introduce, and shall determine the facts by the preponderance of the evidence." Patty v. Board of Prof'l Responsibility, 90 S.W.3d 641, 644 (Tenn. 2002); Tenn. Sup. Ct. R. 9, § 1.3. Where the trial judge bases his or her decision on the same evidence that is before the hearing panel,[6] the trial judge must affirm the panel "'[u]nless that evidence preponderates against the findings by the Committee.'" Gannon v. Board of Prof'l Responsibility, 671 S.W.2d 835, 837 (Tenn. 1984) (quoting Office of Disciplinary Counsel v. McKinney, 668 S.W.2d 293 (Tenn. 1984)).

Our review on appeal is limited to "the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing committee." Tenn. Sup. Ct. R. 9, §1.3. We review the lower court's decision de novo, "with a presumption of correctness unless the preponderance of the evidence is contrary to the trial court's action." Patty, 90 S.W.3d at 644 (citing Murphy v. Board of Prof'l Responsibility, 924 S.W.2d 643 (Tenn. 1996)); see also Galbreath v. Board of Prof'l Responsibility, 121 S.W.3d 660, 665 (Tenn. 2003).

The conduct at issue occurred between 1991 and 1998. Therefore, we apply the Code of Professional Responsibility, rather than the Rules of Professional Conduct currently in force. Tenn. Sup. Ct. R. 8, Transition Rules Governing the Implementation of the Tennessee Rules of Professional Conduct (rules "shall become effective as of March 1, 2003, and shall have prospective application only . . .").

## ANALYSIS

Cohn argues that disciplinary sanctions are not supported by the record because he applied for post-confirmation attorney's fees as a creditor using section 1305 in good faith. Cohn also raises several constitutional and procedural issues. The Board, however, argues that the sanctions imposed by the trial court were disproportionately mild and asks this Court to increase the severity of the disciplinary sanctions. We will address each argument in turn.

### Violation of Disciplinary Rules

We must decide whether Cohn's use of section 1305 to obtain attorney's fees, prior to the bankruptcy court's decision in In re Phillips, violated his ethical obligations under the Code of Professional Responsibility. In this appeal, we accept and agree with the federal bankruptcy court's determination in In re Phillips that section 1305 is an improper vehicle for collecting attorney's fees. The issues before us are whether Cohn's conduct violated professional disciplinary rules and, if so, whether the trial court imposed appropriate sanctions.

---

[6] The trial judge considered all of the evidence that was before the hearing panel, plus the deposition of an additional expert witness.

Cohn asserts that in using section 1305 to collect post-confirmation attorney's fees as a creditor, he was making a good faith extension of the law for several reasons. First, Cohn argues that, by its plain terms, section 1305 should apply to attorney's fees. Second, he argues that prior to the bankruptcy court's decision in In re Phillips, there was no controlling authority on collecting post-confirmation fees in Chapter 13 cases. Third, he argues that because the trustee was aware of his practice for seven years before raising an objection, and because the bankruptcy court had adopted streamlined procedures for dealing with attorney's fees, he was entitled to believe that his practice was acceptable. Finally, Cohn argues that he has breached no ethical duties because his conduct was "open and not concealed." The Board argues that the trial court's conclusion that Cohn violated the disciplinary rules charged is supported by the record.

*Plain Language of Section 1305*

Cohn argues that because section 1305 resides in Chapter 13, it was intended to apply broadly to Chapter 13 creditors. Section 1305 requires only a "proof of claim," rather than a detailed statement. Thus, Cohn argues, by its plain terms section 1305 obviates the necessity for a detailed statement as required by section 330 and Bankruptcy Rule 2016, even if the claim being submitted is for attorney's fees.[7]

We reject Cohn's argument that the plain terms of section 1305 permitted him to file proofs of claim for post-confirmation attorney's fees, because Cohn has not demonstrated that he either complied with or was excused from section 1305(c)'s requirement of prior trustee approval. In holding that section 1305 is not an appropriate vehicle for collecting post-confirmation attorney's fees, the bankruptcy court determined that prior approval of the trustee should be excused only when the claimant was ignorant of the requirement or when exigent circumstances (such as the need for immediate medical care or transportation) made it impossible to obtain approval. The court concluded that, as a long-time practitioner, it was "inconceivable that Mr. Cohn [could] claim he [was] ignorant of the mandatory requirements of § 1305(c)." In re Phillips, 219 B.R. at 1007. As to the "exigent circumstances" requirement, the court examined the legislative history of section 1305 and concluded that section 1305 was not intended to encompass the type of "routine legal work" for which Cohn submitted claims. Id.

We are convinced by the bankruptcy court's analysis. The chancery court observed that Cohn made a "plausible" argument that section 1305 permitted him to seek post-confirmation fees using proofs of claim. We strongly disagree, based on both the legislative history of section 1305 and that section's requirement of trustee approval. First, section 1305 applies only to taxes and to claims for "consumer debt" that is "for property or services <u>necessary for the debtor's performance under the plan</u>." 11 U.S.C. § 1305(a)(2) (emphasis added). "Consumer debt" is defined by the Bankruptcy Code as "debt incurred by an individual primarily for a personal, family or household purpose . . . ."

---

[7] Rule 2016 provides that any "entity" seeking any "compensation for services" from the bankruptcy estate "shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).

11 U.S.C. § 101(8) (2004). As the bankruptcy court explained, the legislative history reveals that in contemplating what might be "necessary for the debtor's performance," Congress was concerned with exigent circumstances. Examples of "necessary" services cited in the legislative history are medical bills or auto repairs to enable a debtor to get to work. See In re Phillips, 219 B.R. at 1007 (citing H.R. Rep. No. 95-595, at 427-28 (1977) (reprinted in (1978) U.S. Code Cong. & Admin. News 5787, 5963, 6383)). In sum, section 1305 creates a procedure to expedite the payment of necessary, unforeseen expenses incurred by a debtor. We agree with the bankruptcy court that "there is no indication that Congress intended routine legal work . . . to be within the purview of § 1305." In re Phillips, 219 B.R. at 1007.

Second, Trustee George Stevenson argued to the bankruptcy court and testified before the hearing panel that even if the "consumer debt" contemplated by section 1305 included post-confirmation attorney's fees, Cohn did not comply with that section's requirement that the claimant receive prior approval of the trustee if "practicable." 11 U.S.C. § 1305(c). The statute plainly states that trustee approval must be obtained prior to incurring any charges "if practicable." As the bankruptcy court found, Cohn "made no showing whatsoever" that obtaining such approval was not practicable or that he ever attempted to obtain it. In re Phillips, 219 B.R. at 1007.

*Absence of Controlling Authority*

Cohn next argues that because the Bankruptcy Code contains no explicit provision governing post-confirmation fees in Chapter 13 cases, his use of section 1305 to collect post-confirmation fees was a good-faith attempt to extend the law.

As the trial court observed, prior to the bankruptcy court's opinion in In re Phillips, there was no definitive rule in the United States Code or in the case law governing post-confirmation fees in Chapter 13 cases. Indeed, "[t]he status of a post-petition claim under Chapter 13 [was] somewhat ambiguous." In re Perkins, 304 B.R. 477, 481 (Bankr. N.D. Ala. 2004); cf. In re Bottone, 226 B.R. 290, 296-97 (Bankr. D. Mass. 1998) (discussing whether attorney's fees incurred in Chapter 7 proceeding are payable upon conversion to Chapter 13); In re Hanson, 223 B.R. 775, 780 (Bankr. D. Or. 1998) (following In re Phillips and holding that section 1305 may not be used for post-confirmation attorney's fees). While we agree that the Bankruptcy Code is not a model of clarity on the subject of post-confirmation Chapter 13 attorney's fees, we note that the provisions of the code that do address attorney's fees evince an overarching concern for disclosure. In concluding that section 1305 was an improper vehicle for collecting post-confirmation attorney's fees, the bankruptcy court emphasized the fact that Cohn's procedure evaded meaningful review by the bankruptcy court, the creditors, and his clients. In re Phillips, 219 B.R. at 1008. The court explained that because there is always a potential conflict of interest between the attorney and the debtor when a debtor's attorney seeks additional fees, the code's requirements of full disclosure, notice and a hearing are critical to "protect the debtor by assuring review of the attorney's application by both the chapter 13 trustee and the bankruptcy judge, as well as by the debtor." Id. at 1010.

Additionally, the testimony before the hearing panel as to local practice and procedures weighs heavily against a finding of good faith as to controlling authority. Judge Brown, Trustee Stevenson, and two expert witnesses testified that when the court granted bankruptcy practitioners the initial fee (based on the presumption of reasonableness), all understood that the fee was intended to cover the entire representation, not just pre-confirmation proceedings.[8] This understanding that the initial fee was to cover the entire case is bolstered by testimony that filing for additional fees was extremely rare.

Although we recognize that the Bankruptcy Code is not crystal clear with regard to post-confirmation attorney's fees, we agree with the bankruptcy court and with the hearing panel that "inherent in all of the workings of the bankruptcy court is a controlling principle that a full review of all attorney's fees must occur." See also In re Kisseberth, 273 F.3d 714, 721 (6th Cir. 2001) ("The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys."); 11 U.S.C. § 329 (requiring fee disclosure) and § 330(a)(4)(B) (permitting courts to approve "reasonable" attorney's fees only upon a determination of "benefit and necessity" to the debtor). Cohn's procedure subverted this controlling principle and cannot be said to have been in good faith.

*Trustee's Tacit Validation of Cohn's Practice*

Cohn next argues that because the Chapter 13 trustee was aware of his practice as early as 1991, but did not object to it until 1998, he was entitled to believe that his practice had the trustee's approval. Additionally, he argues that because the Western District had adopted a system for awarding attorney's fees based on efficiency and presumptions of reasonableness, rather than engaging in the strict lodestar analysis required by the Sixth Circuit, he was acting in good faith by working within the framework established by the local bankruptcy court.

The record firmly establishes that the trustee did know about Cohn's procedure for seven years prior to bringing the objections that resulted in In re Phillips. The trustee attributed the delay in addressing Cohn's procedure to the fact that, "we are so big, we involve so many processes that processes just go on . . . you can't look at each and every process each and every day. Things . . . don't get reviewed until some event triggers a review . . . ."

Cohn argues that the Western District's method for awarding fees based on a presumption of reasonableness was not in strict compliance with the Sixth Circuit's pronouncement that bankruptcy courts must conduct a lodestar analysis in awarding attorney's fees. See Boddy, 950 F.2d at 337 ("the establishment of a fixed fee for certain 'normal and customary' services is directly contrary to the plain 'actual, necessary services rendered' language of 11 U.S.C. § 330"). Judge Brown and the trustee both testified that the Western District's method is distinguishable from

_____

[8] For example, Judge Brown stated in his deposition, "[i]f I thought that that presumptive fee was just to get the confirmation, I wouldn't be allowing it personally, because it's too much money to just get to confirmation. In the typical case, I consider you've bought into the whole case."

Boddy, as the Western District uses only a presumption of reasonableness, rather than a fixed fee. In any event, our task is not to assess the correctness of the bankruptcy court's procedures; Cohn's argument amounts to an assertion that because the bankruptcy court may not have been in strict compliance with the Bankruptcy Code, he was not required to comply either. We reject this argument.

Although the bankruptcy court acknowledged that both the trustees and the court itself shared some responsibility for allowing Cohn's use of section 1305 to persist for so long, the bankruptcy court ultimately laid the blame squarely upon Cohn, as did the hearing panel. The trial court agreed that Cohn violated the disciplinary rules, but found that the trustee's delay in addressing Cohn's procedure militated against the imposition of sanctions. Evidence of the trustee's inaction did not, however, convince the hearing panel or the chancellor that Cohn did not violate the Disciplinary Rules charged in the petition. Judge Brown and the expert witnesses testified before the hearing panel that, rather than making assumptions, if a practitioner was unsure of whether his attorney's fee filings were correct, the proper thing to do would be to ask the trustee. Although we also believe the trustee and the bankruptcy court share some responsibility for allowing Cohn's practice to continue for seven years, we decline to adopt Cohn's argument that, essentially, the trustee and the court are to blame for not catching him sooner. We believe the primary responsibility is Cohn's for initiating and continuing the practice until he was stopped, and we agree that the preponderance of the evidence supports the conclusion that Cohn did violate the disciplinary rules as charged.

*Conduct "Open and not Concealed"*

Cohn does not deny that, in practice, his post-confirmation fees were not subject to scrutiny by the court, the trustee, or the client. He argues, however, and the chancery court found, that in spite of the vague nature of the proofs of claim he did not "attempt to hide" what he was doing and did not "act surreptitiously" in filing his proofs of claim. Cohn argues that all parties had an opportunity to review and object to his claims and faults the bankruptcy court and the trustees for not availing themselves of the opportunity to scrutinize his claims.[9]

Although technically Cohn's procedure appeared to be open, in practice it was concealed. As the hearing panel stated, "the procedure used by Cohn was designed to avoid the scrutiny of the bankruptcy court, the Bankruptcy Trustee and the client." The record establishes that Cohn knew that due to the volume of claims submitted to the court, his proofs of claim would not be meaningfully reviewed by either the trustee or the court. Indeed, the Bankruptcy Code provides that proofs of claim are generally to be "deemed allowed." 11 U.S.C. § 502 (2004). One expert witness, as well as the Chapter 13 trustee, testified that the proof of claim forms filed by Cohn did not in any

---

[9] Essentially, Cohn argued that the court should be looking at all orders approving proofs of claim, since they carry a signature stamp of both the judge and the trustee. Judge Brown replied that that would be impractical, but told Cohn, "If you would file a 330 application, I would look at it. . . . I look at every 330 application . . .but when it is an administrative order that's not put on the calendar for a hearing or any opportunity for a hearing, then it never comes to my attention. . . . And that is what I am trying to point out to you, is that the present procedure you are using never gets on the calendar, it never is brought to a judge's attention."

way indicate that they were for post-confirmation fees. (As the trustee testified, "[t]hese particular claims, there's no telling what they're for. Cohn could've been their landlord.") Moreover, the only notice of the claims Cohn's clients received was an order stating that the claims had already been approved, without any explanatory or supporting documentation. We are particularly disturbed by the lack of meaningful notice given to Cohn's clients of both his post-confirmation claims procedure and the post-confirmation claims themselves. We note that the record establishes that all clients signed the contract and that Cohn testified that he explained the contract and the terms of his representation to all of his clients. However, although the record contains testimony from a few clients who seemed to understand Cohn's two-part fee structure, there is also ample testimony from a number of clients who did not understand the system. We conclude that in light of his failure to give meaningful notice of his post-confirmation claims to the court, the trustee, and his clients, Cohn's practice was not open but was surreptitious and designed to avoid scrutiny.

*Conclusion*

In sum, we affirm the trial court's affirmance of the hearing panel's determination that Cohn violated the disciplinary rules charged. The preponderance of the evidence supports the conclusions of the hearing panel and the chancery court. The record contains ample evidence that, as an experienced bankruptcy practitioner, Cohn used section 1305 to collect post-confirmation attorney's fees and thus avoided the disclosure requirements of section 330. He thereby breached his ethical duties to his clients, to the court, and to the profession. We affirm the chancery court's conclusion that Cohn violated the disciplinary rules.

**Cohn's Other Arguments**

Cohn makes several other arguments against the imposition of discipline, including questioning this Court's jurisdiction and raising constitutional claims. We address those issues briefly.

First, Cohn argues that under the doctrine of res judicata, this Court has no authority to order disgorgement in closed bankruptcy cases because those cases are final federal court orders. The doctrine of res judicata "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting Goeke v. Woods, 777 S.W.2d 347, 349 (Tenn. 1989)). The doctrine does not apply here. Neither claim preclusion nor issue preclusion bar the Board's action against Cohn because the Board was not a party to the bankruptcy court proceedings, and the bankruptcy court cannot be said to have been in privity with the Board. See, e.g., Harris v. St. Mary's Med. Ctr., 726 S.W.2d 902, 905 (Tenn. 1987).

In addition, although the bankruptcy court's approval of a settlement as to the attorney's fee dispute in In re Phillips is a final judgment, it does not preclude the Board of Professional Responsibility, under the authority of this Court, from ordering disgorgement in those cases. We have stated many times that this Court has inherent authority to regulate the practice of law pursuant

to Article VI, section 1 of the Tennessee Constitution.  Doe v. Board of Prof'l Responsibility, 104 S.W.3d 465, 469 (Tenn. 2003); see also Brown v. Board of Prof'l Responsibility, 29 S.W.3d 445, 449 (Tenn. 2000); Petition of Burson, 909 S.W.2d 768, 772-73 (Tenn. 1995); Petition of Tennessee Bar Ass'n, 532 S.W.2d 224, 228-29 (Tenn. 1975); Belmont v. Board of Law Exam'rs, 511 S.W.2d 461, 462 (Tenn. 1974).  "In furtherance of our duty to regulate the practice of law in Tennessee . . . when appropriate, [we] discipline attorneys who violate the rules governing the legal profession." Doe, 104 S.W.3d at 470.  In short, orders of disgorgement in a bankruptcy case are sanctions upon an attorney, not a modification of a debtor's discharge.

Next, Cohn argues that the Board cannot appeal a decision of a hearing panel.  We also find this argument to be without merit.  Tennessee Supreme Court Rule 9, section 6.1 provides that this Court "shall appoint one hearing committee within each disciplinary district."  The rule further provides that disciplinary charges shall be decided by a hearing panel, which is a three-member subset of the hearing committee.  Id. § 6.4.  The rules also provide that "[t]he respondent or the Board may have a review of the judgment of a hearing committee . . . ."  Id. § 1.3.  The Board is not appealing its "own" decision, as Cohn argues, but is appealing the decision of a separate entity, the hearing committee.  See also Tenn. Code Ann. § 27-9-101 (2000) (providing that "[a]nyone who may be aggrieved" may appeal a judgment).

Third, Cohn argues that the hearing panel's failure to bifurcate the issue of his punishment and the issue of whether he had committed ethical violations infringed his right to due process. Cohn argues that because his four previous reprimands were private, rather than public, sanctions, neither the fact of the reprimands nor their substance should be disclosed to the hearing panel.  Cohn has cited to us no authority requiring that hearing committee proceedings be bifurcated, and we have found none.  Although private reprimands are indeed intended to be a matter between the attorney and the Board, "former misconduct must remain a part of the professional record to be considered as part of the evidence of professional fitness or unfitness."  Berke v. Chattanooga Bar Ass'n, 436 S.W.2d 296, 309 (Tenn. Ct. App. 1968).  Accordingly, we find no error in this regard either before the hearing panel or the trial court.

Finally, Cohn raises several additional vague due process arguments, citing no authority and offering little argument to support his contentions.  We therefore conclude that there is no merit to his contentions and that he is not entitled to relief on those grounds.

**Sanctions**

Cohn also appeals the chancery court's order that he disgorge all post-confirmation attorney's fees in the sixty-one cases before the bankruptcy court in In re Phillips.  The Board appeals the trial court's failure to suspend  Cohn's law license, arguing that a minimum two-year suspension is appropriate, given the nature of the violation and Cohn's prior disciplinary record.

*Disgorgement*

The bankruptcy court approved a settlement order in the active cases requiring Cohn to disgorge $2,436.85 in post-confirmation attorney's fees. The hearing panel ordered Cohn to disgorge "all funds" received from the sixty-one clients at issue in In re Phillips, and the chancery court affirmed the order to the extent that the fees were for post-confirmation work, ordering Cohn to return $13,996.73 to the bankruptcy court.[10] The Board urges us to affirm the disgorgement order, arguing that attorneys who are in the wrong are not entitled to quantum meruit compensation. See Swafford v. Harris, 967 S.W.2d 319, 324-25 (Tenn. 1998); White v. McBride, 937 S.W.2d 796, 803 (Tenn. 1996).

Having reviewed the record, we affirm the decision of the chancery court and conclude that its decision to require disgorgement of the full amount of the fees was supported by a preponderance of the evidence. As an experienced bankruptcy attorney, Cohn was certainly aware that his surreptitious method for obtaining post-confirmation fees had not been approved by the bankruptcy court and that as a result his fee applications were not being meaningfully reviewed by the court. Additionally, the record establishes that it was common knowledge among bankruptcy practitioners in the Western District that the initial fee was intended to cover an attorney's entire representation in a bankruptcy case. Although Cohn stated in both his contracts and his section 329 disclosures that he would only apply the initial fee to pre-confirmation work, as we conclude above, the Bankruptcy Code requires that attorney's fees receive meaningful approval from both the client and the court. Finally, Cohn represented to his clients that he would bill them by the hour for post-confirmation fees, but the record establishes that he did not bill them and did not actually keep time records upon which to base those post-confirmation fees.[11]

Moreover, Cohn stated several times in the record that, because the post-confirmation fees were to be paid as unsecured claims, he did not expect to collect the full amount of the fees. Judge Brown testified that Cohn's post-confirmation charges were excessive, and in In re Phillips, he was critical of the fact that Cohn charged $450 "over and over for what appeared to be simple and very routine matters." 219 B.R. at 1008. Judge Brown testified that these were "more of an administrative matter than a legal matter, justifying very little time on the part of the attorney." Although Cohn attempted to defend the amount of the post-confirmation claims as reasonable, his expectation that such claims would be paid at only a percentage of their face value raises a troubling

---

[10] Cohn has not argued against the calculation of this amount, only that the disgorgement order as a whole was not warranted. Cohn stated at oral argument that he has satisfied the order to reimburse the bankruptcy court.

[11] Cohn admitted before the bankruptcy court, and again before this court during oral argument, that he does not keep time records in spite of his contractual promise to his clients that he would bill by the hour.

inference of inflated billing in violation of the Bankruptcy Code and in violation of the disciplinary rules. This violation, standing alone, justifies disgorgement of the fees.[12]

The chancery court ordered disgorgement of the fees to the bankruptcy court. The chancellor stated that "perhaps the bankruptcy court may determine that [Cohn is] entitled to some or may determine that he's entitled to none of them, but that's not my decision." We agree that the prudent course is to leave it to the bankruptcy court to decide whether to allow Cohn to reapply for any of the fees using section 330, as it did in its earlier proceeding.

*Suspension*

The hearing panel ordered Cohn to make disgorgement within sixty days; should he fail to do so, the panel imposed an "automatic suspension" of Cohn's license "until such time" as Cohn proved that the required payment had been made. Cohn made the payment and so was not subject to the suspension. The chancery court declined to approve the Board's suspension order until the fees were paid, reasoning that it amounted to an improper indefinite suspension.[13] The Board argues strenuously that a suspension of at least two years is appropriate.

In urging us to impose a lengthy suspension on Cohn, the Board directs us to the standards set forth by the American Bar Association ("ABA"). See ABA's Standards for Imposing Lawyer Sanctions (1986, as amended 1992) ("ABA Standards"). The Board has adopted the ABA Standards for disciplinary matters. Dockery v. Board of Prof'l Responsibility, 937 S.W.2d 863, 866 n.6 (Tenn. 1996).

Although not binding on this Court, we note that the ABA Standards instruct a court to examine the duty violated, the attorney's mental state, the potential or actual injury caused by the attorney's misconduct, and the existence of any aggravating or mitigating factors. ABA Standard 3.0. The standards generally provide that suspension is appropriate when a lawyer knowingly breaches a duty or otherwise engages in misconduct. See ABA Standards 4–7. The standards recommend that suspensions be for a minimum of six months. ABA Standard 2.3.

---

[12] As the bankruptcy court explained,

> Mr. Cohn states that he was not attempting to collect 100% of these post-confirmation fees since most of his clients' plans were confirmed at less than 100% to unsecured creditors. . . . The flaw in this theory is its apparent admission that the claimed fee is in excess of what is reasonably expected; thus, the process invites even more ethical issues.

219 B.R. at 1011.

[13] See Supreme Court Rule 9 § 4.2 (providing that discipline may include "[s]uspension for an appropriate fixed period of time, or for an appropriate fixed period of time and an indefinite period concurrently or thereafter to be determined by the conditions imposed by the judgment").

15

We agree with the Board that the preponderance of the evidence supports imposing a suspension on Cohn. Cohn used an improper, deceitful procedure to collect attorney's fees that he knew, or certainly should have known, was not supported by the plain language of the code or by local practice and procedure. He violated the duty to refrain from conduct that involves fraud, deceit, or misrepresentation; he violated the duty to explain matters clearly to his clients; he violated the duty not to charge clearly excessive fees; and he knowingly engaged in conduct prejudicial to the administration of justice. By filing for attorney's fees using a method that avoided, almost entirely, the scrutiny of the court, Cohn eviscerated the judicial oversight functions essential to maintaining the integrity of the relationship between a Chapter 13 debtor and his attorney. As the bankruptcy court noted, Cohn created a situation ripe for the possibility of a conflict of interest between himself and his clients. Although there is always a potential conflict between a debtor and her attorney when the attorney seeks fees from the debtor's estate, Cohn's clandestine use of section 1305 evaded the judicial oversight necessary to protect his debtor clients. Moreover, he engaged in this conduct for over seven years.

In determining the length of a suspension, we must consider the aggravating and mitigating factors. Aggravating factors, as pointed out by the Board, include Cohn's four prior reprimands. Additional aggravating factors are the fact that Cohn is an experienced bankruptcy attorney and the fact that he engaged in a pattern of misconduct in multiple cases over the course of seven years.

As to mitigating factors, we agree with the chancellor's conclusion that the bankruptcy trustee must share some responsibility for not stopping the practice earlier, but the primary responsibility remains Cohn's. He created a surreptitious, deceitful method of collecting attorney's fees calculated to avoid the scrutiny of his own clients, the trustee, and the court. He continued the practice for seven years until he was finally stopped. Weighing the aggravating factors against the mitigating factors, we have determined a suspension is justified, but we decline to order the ABA recommended suspension of six months. Instead, we impose a suspension of ninety days.

## CONCLUSION

After our review of the record, we conclude that the chancery court properly affirmed the hearing committee's conclusions with regard to the petitioner's violations of the disciplinary rules, and we affirm that part of the chancery court's judgment. We also affirm the chancery court's order of disgorgement, but we vacate its imposition of a public censure. We reverse the chancery court's decision not to impose a suspension, and hereby order that Cohn be suspended for a period of ninety days. The costs of the appeal are assessed equally between the parties.

_____
E. RILEY ANDERSON, JUSTICE

16